Syllabus.

## Wytheville.

## N. & W. R. R. Co. v. Ferguson.

### July 31, 1884.

1. PRACTICE AT COMMON LAW—*Certificates.*—Whether certificates are to be treated as of the facts or of the evidence, rests within the province of 'the appellate court to determine. *Read's Case*, 22 Gratt. 929.

2. NEGLIGENT INJURIES—*Contributory Negligence.*—In order to maintain an action for an injury, it must be proved that the injuries were caused by the negligence of the defendant or his agents, and it must not appear from the evidence that want of ordinary care and prudence on the part of the plaintiff *directly* contributed to the injury. *Dun* v. *S. & R. Railroad Co.*, 78 Va. 645

3. IDEM—*Negligence—Onus probandi.*—Where negligence is the gravamen of the action, the law does not impute it, but the burden of proving it rests on him who alleges.

4. RAILROAD'S NEGLIGENCE.—The train's mere speed of motion is not, *per se*, evidence of negligence, nor is the fact that the train is "behind time."

5. CONTRIBUTORY NEGLIGENCE—*Case at Bar.*—In August, 1881, at B. F. took passage on defendant's freight train for M. Before leaving B. he drank beer, and at A. he drank whiskey. In the caboose there were, along its sides, seats for half a dozen passengers, where they would be safe from falling out of the open side doors. But F. voluntarily sat in a light, loose chair, known to him to be the conductor's seat, and placed against a box that was within three inches of the open side door of the caboose. The train had moved slowly from B. to A., and was half an hour behind time, but after leaving A. ran thirty-five miles an hour down grade, around short curves. Whilst F. was so sitting in the chair, leaning back against the side of said open door, with his legs crossed, and whilst the train was so running between A. and M., the cars ran together so hard as to cause F. to fall out of said open door, whereby he was much injured.

HELD:

>  F. was guilty of contributory negligence, but for which the injury
>  would not have occurred, and hence is not entitled to recover.

Error to judgment of circuit court of Washington county rendered 23d May, 1883 in an action of trespass on the case wherein George B. Ferguson was plaintiff and the Norfolk and Western railroad company was defendant. The object of the action was to recover compensation for an injury which, he alleged, had been received by him whilst a passenger on the company's freight train from Bristol to Marion, in August, 1881, by reason of the negligence of the company's agents in so running said train as to throw him out of the open side door of the caboose. The action was tried by a jury who rendered a verdict for the plaintiff and assessed his damages at $5,250. The defendant moved for a new trial on the ground that the verdict was contrary to the law and the evidence, which motion was overruled; and judgment was entered accordingly, and the defendant obtained from one of the judges of this court a writ of error and *supersedeas* to the judgment. The opinion states the facts.

*Fulkerson & Page*, for the plaintiff in error.

*Campbell & Trigg*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court :

The facts of the case, as disclosed by the record, are: that the plaintiff, George B. Ferguson, became a passenger on the 1st day of August, 1881, from Bristol to Marion on a caboose car attached to a freight train upon the Norfolk & Western railroad. When he entered the caboose, at Bristol, he took a seat in a chair, near an open sliding side door of the caboose. The chair was the conductor's chair, as the plaintiff knew. When the train reached Abingdon the plaintiff ascertained, from the conductor, how long a time it would stop there, and got off the train and went

to a saloon and obtained a drink of whiskey. He returned to the caboose, took the same seat previously occupied by him, and so remained till the train reached a point some three or four miles east of Abingdon, at or near to a place in the said road called Hagy's cut, where the train had to go around a short curve and down grade, when plaintiff fell or was thrown out of the caboose, through the side door, near the edge of which he was sitting, and fell down an embankment breaking his ankle and sustaining other heavy and severe injuries, for which he instituted this action of trespass on the case, and laid his damages at $20,000.

The declaration, which is in due form and was not demurred to, charges that, on the 1st day of August, 1881, the plaintiff, at the special instance and request of the defendant, became and was a a passenger in said caboose, to be safely carried thereby on a certain journey from said depot at Goodson, to the defendant's depot at Marion, as aforesaid, for a certain fare and reward to the said defendant in that behalf, and the defendant received the said plaintiff as such passenger ; and, thereupon, it became and was the duty of the defendant to use due and proper care that the plaintiff should be safely carried by the said caboose on said journey. Yet the defendant, not regarding his duty in that behalf, did not use due and proper care that the plaintiff should be safely carried by said caboose on said journey; but, wholly neglected so to do, suffered said engine and tender and cars thereto attached to be forced along said railway so rapidly, and to be managed and conducted so recklessly, unskilfully and negligently, that by reason thereof, the plaintiff was thrown from said caboose with such force and violence upon and against the ground, that he was thereby, then and there, rendered insensible, and one of his legs was broken and otherwise greatly bruised and injured, and one of his ankles was dislocated, tearing loose the ligaments on the inside of the ankle joint, and displacing all of the smaller bones of the joint, and his back and one of his hips were strained, bruised and injured, causing him great pain,

and the blood was forced from his mouth and nose, and in this condition he was left and permitted to remain by defendant from about 11 o'clock A. M. to about 3 o'clock P. M., exposed to the burning rays of the sun, so that he suffered extreme mental and physical pain and anguish; and, also, by means of the premises, the plaintiff was otherwise greatly bruised, wounded, hurt and injured, and became and was sick, sore, lame and disordered, and so continued for a long space of time, to-wit: hitherto and still so continues, &c., &c., to the damage of the plaintiff $20,000.

There is but this one count in the declaration.

At the October term, 1881, of the said court, the defendant filed a plea of not guilty, upon which plea issue was taken, and at the May term, 1883, of said court, the cause was tried by a jury upon the evidence and instructions given by the court, and a verdict rendered in favor of the plaintiff for the sum of $5,250; and, thereupon, the defendant moved the court to set aside the said verdict and grant it a new trial, because the same was contrary to the evidence and the instructions of the court, and because the same was not sustained by the evidence, and because the damages assessed by the said verdict were excessive; which motion the court overruled, and entered up judgment for the plaintiff upon the verdict aforesaid.

The evidence, as stated in the bill of exceptions, is certified by the court in the form of a certificate of evidence rather than as a certificate of facts; and upon the established rule, this court in determining the question whether the circuit court erred in overruling the motion to set aside the verdict of the jury, and to grant a new trial, must reject all the evidence introduced by the plaintiff in error (the exceptor in the court below), which is in conflict with that of the adverse party, and give full faith and credit to the testimony introduced by the adverse party, though it is within the province of this court to determine whether the certificate should be treated as one of facts or evidence. *Read's Case,* 22 Gratt. 929.

But upon the most rigid application of the rule which excludes the evidence of the plaintiff in error in this case, we think that the evidence of the defendant in error (who was the plaintiff in the trial court), as well that given by himself, as that given by the witness whom he introduced, plainly shows that but for the carelessness and contributory negligence of the defendant in error himself the injury would not have occurred.

The defendant in error was severely injured; but there was no accident to the train, or any occurrence whatever, other than the usual and inevitable incidents to the running and management of the freight trains around the curves and down the grades of the road. The evidence shows no negligence or want of skill on the part of the employees of the road. It is not charged, nor does the evidence show that there is any defect in the structure or condition of the road, or in its machinery and equipment. The defendant in error, George B. Ferguson, was his own witness, and he testified that when he entered the caboose at Bristol, he seated himself in a chair, which he knew to be the conductor's chair, near an open side door of the caboose. That there were fixed seats in the caboose, placed there for the use of passengers, running lengthwise on both sides the caboose, by occupying any one of which he would not have been in danger of falling, or being thrown from the caboose; that those benches or fixed seats on the sides of the caboose would, each, have seated six persons; that they are safe; and, that if he had taken a seat on one of them, he would not have fallen out. He testified that he drank some beer before he left Bristol, and that when the train reached Abingdon he got off the train and went to a saloon and drank some whiskey; that it was the 1st day of August; and that the chair in which he was sitting was against a box, which was within two or three inches of the open side door of the caboose, near which he was sitting from the time he left Bristol till he fell out, except once when he walked across the caboose, when it passed Montgomery's switch, and looked

out of the door on the opposite side. That he supposed the train was running at the rate of thirty-five miles an hour when he fell out; that it ran faster after it left Abingdon than it had done before; that Mr. Stanley, the engineer of the train, told him while he was off the caboose at Abingdon, "that he had run slow to Abingdon, but intended to run like hell after he left there." That the train was half an hour behind time when it left Abingdon; that the seat in the chair would have been safe if they had run as they did from Bristol to Abingdon, and had not jolted as they did when he was thrown out; that the reason he thought the train was running thirty-five miles an hour was, that he had traveled on trains running a mile a minute, and thought, from the way this train was running, it was thirty-five miles an hour.

John W. Barr, a witness who was introduced on behalf of the plaintiff, Ferguson, testified that the plaintiff was brought to his hotel at Abingdon, and remained there eight days; that he told him about the accident, and that his understanding from what the plaintiff told him was, that plaintiff was leaning back in a chair, against the doorpost, with his legs crossed; and that plaintiff did not blame the railroad company so much for the accident, as he did because he was left to lie so long upon the side of the road.

Here is the defendant in error admitting, and stating in evidence on the trial, that, upon an August day, near noon, he, already heated with hot and intoxicating liquors (and mixed drinks of beer and whiskey at that), entered the caboose where there were regularly provided and safe seats for passengers, and voluntarily seated himself in a light, loose chair upon the imminent verge of the open side door of the caboose, leaning back against the side of the open door, with his legs crossed, upon a train which, he says, was running at the speed of thirty-five miles an hour, around short curves, and on a down grade. Could even a perfectly cool, sober, thoughtful and careful person, in such a position as that in which the defendant in error,

himself, says he was, on this freight train moving at the rate of thirty-five miles an hour, or any approximate rate, on a down grade, and around a short curve, have maintained his seat in a light, loose chair, near an open side door eight feet wide, leaning back against the door-post, with his legs crossed, against the heavy lurching and centrifugal force of the caboose, thus impelled around a short curve of the line of the road?

The defendant in error testifies that when the train got to Hagy's cut, it was going around a short curve and down grade, and a reverse of some kind caused him to be thrown out of the open door. That he did not know whether the engine was reversed or not, but that the cars ran together so hard as to cause him to be thrown out; that he caught the side of the door with his hand and prevented himself from falling upon his head—that the chair fell out with him.

" It has been a rule of law from time immemorial, and is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual fault of both parties. When it can be shown that it would not have happened, except for the culpable negligence of the party injured concurring with that of the other party, no action can be maintained." *Railroad Company* v. *Jones*, 95 U. S. R. 439 (opinion of Justice Swayne). This question of contributory negligence by the party injured has been often the subject of judicial investigation in the courts of other states, and in the case recently decided in this court of *Dun* v. *Seaboard & Roanoke Railroad Company*, 78 Va. (3 Hansbrough) 645, Judge Lacy, in delivering the opinion of the court, said : " It seems to be the better rule both upon authority and upon reason, that the passenger being endowed with intelligence which enables him to foresee and to avoid danger, the exercise of at least ordinary prudence is required on his part to escape it ; and if, by his failure to exercise these faculties for his own preservation, a misfortune befall him, though the carrier may have been in fault, it will be attributed to his own carelessness and inattention, and the responsibility will not be thrown on the carrier."

In Sherman and Redfield on Negligence, § 478, it is said: " Frequent attempts have been made to convict railroad companies of negligence on the mere ground of the speed at which their trains have been run. But it never has been, and, we trust, never will be established as a rule of law, that any conceivable rate of speed is, *per se,* evidence of negligence. The whole object of the railroad system is to attain a high speed of travel ; and the vast saving of time which the community makes by every increase in the rapidity of travel, with the corresponding increase in the productive power of nations, should make courts and juries cautious lest they hinder the progress of the world by an unwise timidity."

"A carrier is not liable for injuries resulting from an accident against which the highest degree of skill, foresight and diligence would have been unavailing. The presumption of negligence, however, does not attach itself to every injury which may overtake a passenger while being transported in a car ; it belongs only to that class of accidents where the injury is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, or by some other thing which the company can and ought to control as a part of its duty to carry the passenger safely, because in all these matters it is the duty of the company to use the highest degree of care to have all their arrangements safe and in good condition." 20 Amer. Railway Decisions, 245–7 and 261 ; *Meier* v. *Penn. Railroad Company,* 64 Penn. St. 225 ; *Curtis* v. *Rochester & Syracuse R. R. Co.* 18 New York, 534 ; American Law Review, January number, 1871.

" In order to maintain an action against a railroad company for injuries received, &c., it must be proved that the injury was caused by the negligence of the defendant or his agents, and it must not appear from the evidence, that want of ordinary care and prudence on the part of the person injured, directly contributed to the injury. Negligence cannot be imputed to the company from the fact that the train may be behind the usual time." 17 Am. Railway Rep. 253, and cases cited.

" What is such contributory negligence as will defeat a recovery

is usually a question of mixed law and fact, to be determined by the jury. from all the circumstances of the case, and under proper instructions from the court, but where the undisputed facts show, that, by the exercise of ordinary care, a party might have avoided injury, *he cannot recover.*" 14 Amer. Railway Decisions, p. 123. Where negligence is the gravamen of the action and no negligence is proved on the part of the railroad company or by any of its agents or employees, the law does not impute it. It lies on the party alleging it to prove it. *Richmond & Danville Railroad Co.* v. *Anderson,* 31 Gratt. 812.

Applying these authorities to the evidence out of the mouth of the defendant in error, himself, we think it clear, and conclusively certain, that, but for his concurring and co-operating fault, the injury which he brought upon himself would not have happened to him. And we are, therefore, of opinion, that the verdict is plainly against the evidence, and that it should have been set aside, and a new trial awarded, upon the motion of the plaintiff in error.

There were sundry instructions asked for by the defendant in the court below, but which were refused; and the court gave instructions of its own, in lieu thereof. But, as we have disposed of the case upon its merits, we do not deem it necessary to analyze or pass further upon the several assignments of error in the said instructions.

We are of opinion that the verdict is wrong and contrary to the evidence, and that there is error in the judgment of the circuit court of Washington county, as aforesaid; and that the verdict must be set aside, and the judgment of the court thereon be reversed and annulled, and a new trial awarded.

The judgment was as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the argument of counsel, is of

opinion for reasons stated in writing and filed with the record, that the judgment of the circuit court of Washington county is erroneous; it is, therefore, considered by the court that the said judgment be reversed and annulled, and that the plaintiff in error do recover against the defendant in error its costs by it expended in the prosecution of the writ of error and *supersedeas* here.    And this case is remanded to the said circuit court of Washington county, with instructions to set aside the verdict of the jury, and for a new trial to be had thereof in accordance with the foregoing opinion, which is ordered to be certified to the circuit court of Washington county ; and it is further considered by the court, that the plaintiff in error recover of the defendant in error its costs by it expended in its defence in the said circuit court, which is ordered to be certified to the said circuit court.

JUDGMENT REVERSED.