## Richmond.

New York, Phila. & Norfolk R. R. Co. v. Kellam's Adm'r.

November 10th, 1887.

1. Trespass on the Case— *Trespass—Distinction abolished.*—Code 1873, ch. 145, § 6, abolishes distinction between these two actions. Writ in former action ; declaration in latter ; demurrer for the variance properly overruled. *Womack* v. *Circle*, 29 Gratt. 192.

2. Contributory Negligence—*Crossing railroad tracks.*—Intestate in his carriage, with top up, approached defendant's railroad crossing, slowing his horse to a walk when near it. At that point the track was straight. At twenty-five yards from it, and up to it, he had a view of it for miles. Until his horse was on the track, he did not look out for the train. Then he attempted to hurry his horse across in front of the train. He failed, and was killed. Testimony as to whistling was conflicting.

Held :

    Intestate was guilty of contributory negligence, and an instruction to this effect was not improper.

3. Negligence—*Rate of speed—Instructions.*—An instruction that the mere speed of a train and the fact that it is " behind time " are not *per se* evidence of negligence—is not improper.

4. Witnesses—*Impeachment— Testimony at inquest.*—Depositions of witnesses at coroner's inquest are admissible to impeach them when introduced by defendant at trial, on their denying that they made certain declarations at the inquest.

Error to judgment of circuit court of Accomac county, rendered nineteenth June, 1886, in an action at law wherein Thomas G. Pitts, administrator of N. J. Kellam,

deceased, was plaintiff, and the New York, Philadelphia & Norfolk Railroad Company was defendant, for the alleged negligent killing of intestate by defendant company. At the trial there was a demurrer to the declaration, and exceptions to instructions given, which were overruled. On the plea of not guilty, the jury, after hearing the evidence, found for the plaintiff the sum of $2,500 damages. This verdict the defendant moved to set aside, and asked for a new trial, which motion the court having overruled, the defendant company excepted; and the evidence being certified, obtained a writ of error and *supersedeas* from a judge of this court. Opinion states the case.

*Browne & Garrison*, for plaintiff in error.

*Gunter & Blackstone*, for defendant in error.

Richardson, J., delivered the opinion of the court.

The declaration contains but one count, in which it alleged that on the twenty-first day of December, 1885, the defendant was possessed of certain engines and cars, used and employed in conveying passengers and freight along the line of its railway in Accomac county, State of Virginia, and that on said day, the plaintiff's intestate, N. Judson Kellam, in pursuit of his lawful business, was driving along a public road of said county leading from Pungoteague to Fair Oaks, and attempted to cross the track of said company at a crossing known as the Camp-Meeting crossing, in the Pungoteague magisterial district of said county where said railroad track crosses said public road, and the said defendant did, on the date last aforesaid, on its track at the crossing aforesaid, so carelessly, negligently, and with great force and violence, run and drive its engine and coaches upon and against the said N. Judson Kellam

then there being, and thereby then and there, with said
engines and coaches, did so greatly wound said N. Judson
Kellam, that he then and there died, and his death was
caused by said wrongful act, neglect and default of said
railroad company, wherefore, &c.

There was a demurrer to the declaration, which the cir-
cuit court overruled, and thereupon the defendant pleaded
"not guilty," upon which plea issue was joined. At the
trial, the jury rendered a verdict for the plaintiff and
assessed the damages at $2,500. The defendant thereupon
moved for a new trial, on the ground that the verdict was
contrary to the evidence, and because the court had mis-
directed the jury; but the motion was overruled, and the
defendant excepted.

The defendant then moved the court to set aside the
declaration, and all the proceedings under it, as inappro-
priate to the form of action instituted, which motion was
overruled. A motion was then made by the defendant for
a repleader, on the ground that the issue joined was "not
in the action brought, and was immaterial to the action,"
which motion was also overruled. A motion in arrest of
judgment was also made and overruled; "and the defend-
ant thereupon craved oyer of the writ, which was read
to him, * * * * and again moved in arrest of judgment
for errors apparent on the face of the record, which motion
was refused."

The writ commands the sheriff to summon the defendant
company to answer the plaintiff of a plea of *trespass on
the case;* whereas the declaration purports to be in, and is
in form appropriate to, an action of *trespass.*

The court gave judgment according to the finding of the
jury, whereupon the defendant obtained a writ of error
and *supersedeas.*

I. The first assignment of error is that the circuit court
refused to grant the defendant's motion to set aside the

declaration and all the subsequent proceedings, as being inappropriate to the action brought. This assignment is clearly without merit. The statute provides that " in any case in which an action of trespass will lie, there may be maintained an action of trespass on the case." Code 1873, ch. 145, § 6. This provision of the statute was construed in *Parsons* v. *Harper*, 16 Gratt. 64, and in *Womack* v. *Circle,* 31 Gratt. 192, in both of which cases it was held that the intention of the legislature in passing the statute was " to remove the difficulties at common law growing out of the nice distinctions between the cases in which trespass was the proper action, and those in which the remedy was case, and to abolish in effect the distinction between these different causes of action in a declaration *in case*.

The action in both of these cases was trespass on the case, and in each case counts in trespass were united in the declaration with counts in case. This, the court said, would have been a fatal defect on demurrer at common law, but it was held to be unobjectionable under the provisions of the statute above quoted. And we perceive no distinction upon principle between those cases and the case at bar. For if one or any greater number of counts in trespass may, under the statute, be joined in the same declaration with counts in case, it is because, as the court said in the cases referred to, the material distinctions between the two forms of action as they existed at common law have been abolished, at least where the action is in case. In other words, the counts in trespass are, in such case, treated as statutory counts in case. And so here, the writ being in case, the declaration, which contains a single count, may with the same propriety be treated as a declaration in case, and the circuit court rightly so held.

II. We proceed, then, to consider the case on its merits. The rule is, that an action is not maintainable for injuries

to which the injured party has by his own negligence contributed. Hence, in a case like the present, negligence being the *gist* of the action, the question usually arises whether there has been such contributory negligence on the part of the plaintiff, or his decedent, as to prevent a recovery. There is, indeed, an important qualification of the general rule, which was adverted to by this court in *Richmond & Danville R. R. Co.* v. *Anderson's Adm'r*, 31 Gratt. 812, and also in *Dun* v. *Seaboard & Roanoke R. R. Co.*, 78 Va. 645, namely, that mere negligence, or want of ordinary care and caution, does not disentitle the plaintiff to recover, unless it be such that but for that negligence the misfortune complained of could not have happened; nor if the defendant might, after discovering the negligence of the other party, have prevented the mischief by the exercise of due care.

In the decisions of this court (above referred to) the qualification of the rule was stated in the language of the opinion in the leading case of *Tuff* v. *Warman*, 5 C. B. (N. S.) 573, and is the established doctrine in this court. So that, in the light of the rule, and the qualification thereto, "if there was negligence on the part of the defendant, and also on the part of the deceased, and the negligence of the latter contributed to the injury, the right of recovery depends upon the circumstances." If, however, the death of the deceased would not have occurred but for his own negligence, then, as we have seen, there can be no recovery. In the light of these principles, applied to the evidence certified in the bill of exceptions, it is clear that the motion for a new trial ought to have been granted.

As already shown, the charge in the declaration is that the defendant, on the twenty-first of December, 1885, did so carelessly operate one of its trains, in crossing a public highway, as to run with great force and violence upon and against the plaintiff's intestate, whereby he was then and

there killed.   The evidence for the plaintiff shows that on the day mentioned in the declaration the deceased was travelling on the public highway leading from Pungoteague to Fair Oaks, in the county of Accomac; that he was riding in his carriage, "with the top up"; that at the crossing where the accident occurred the road crosses the railroad track at an acute angle; that for several miles, including the crossing, the railroad track is straight; that at a point twenty-five or thirty yards from the crossing, and until reaching the crossing, the deceased had a full view of the railroad track for several miles in either direction, obstructed only by the top and curtains of his own carriage; that on emerging from "a slip of woods," about fifty yards from the crossing, he slowed his horse down to a walk, and did not drive out of a walk, or look out, until the horse was on the track; that then, for the first time looking out and seeing the approaching train, he urged the horse forward, attempting to cross the track in time to avoid a collision.   He failed, however, to do so, and the carriage was struck by the engine, and he was instantly killed.

The evidence for the plaintiff is conflicting as to whether the customary signal, by sounding the whistle of the locomotive, was given for the crossing, and if given, at what point it was given, though the witnesses agree that the whistle was sounded, giving what are called "distress signals" before the deceased was struck.   The evidence also shows that the deceased resided in the neighborhood; that he frequently passed over the crossing; and from the fact that on approaching the fatal spot he failed to look to ascertain whether the crossing could be safely made, the reasonable inference is that he failed to listen also.

These facts are clearly established by the plaintiff's own evidence; and they show that the deceased was, unfortunately, not only culpably negligent in omitting to take

ordinary precautions for his safety, but that he was what may be justly termed reckless. Nor does the evidence establish negligence on the part of the defendant. The engineer on the train, whose duty it was to keep a lookout and to exercise ordinary care to prevent injury to persons or property crossing the track on the public highway, may have well presumed that the instinct of self-preservation would naturally prompt the deceased not to venture on the track in front of the rapidly approaching train; and especially may he have acted on that presumption, in view of the slow pace at which the deceased was moving. Besides, the evidence does not show that, after it became apparent that this supposition was groundless, there was time to stop the train or to avoid the consequences of the negligence of the deceased. In short, it is difficult to imagine a clearer case of contributory negligence—one which more completely precludes all idea of the right of recovery.

In treating of the law of contributory negligence, a learned author says: " Where a party, in the exercise of his own right, is in the enjoyment of that which is common to others also, or which may in any way narrow, impede or restrict the enjoyment of rights by others, his duty to observe a vigilance proportionate to the danger of interference is manifest. Thus, one about to cross a railway track by the public highway, where the liability to collision is great, will be held precluded by his contributory negligence from a recovery for an injury, if he drives upon the track without looking for approaching trains." And this is so, he adds, even though the railway company is required by statute to sound an alarm at such places, and has neglected to do so. Cooley on Torts, 679.

" It is universally deemed culpable negligence for any one to cross the track of a railroad operated by steam power in full view or hearing of an approaching train, or

without taking any precautions (if any are reasonably within his power) to ascertain whether a train is approaching; and as a general, but not invariable, rule, it is such negligence to cross without looking in every direction that the rails run, to make sure that the road is clear." Sherman & Redfield on Neg. § 488.

The adjudged cases in support of these views are almost without number. In the recent case of *Dublin, Wicklow & Wexford Railway Co.* v. *Slattery,* L. R. 3 App. Cas. 1155 (a case most elaborately considered in the House of Lords), the Lord Chancellor (Cairns) is reported as saying : "If a railway train, which ought to whistle when passing through a station, were to pass through without whistling, and a man were, in broad daylight, and without anything, either in the structure of the line or otherwise, to obstruct his view, to cross in front of the advancing train and to be killed, I should think the judge ought to tell the jury that it was the folly and recklessness of the man, and not the carelessness of the company, which caused his death."

In *Schofield* v. *Chicago & St. Paul Railway Co.,* 114 N. S. 615 (a case strikingly like the case in hand), the supreme court of the United States, quoting from its own opinion in *Railroad Co.* v. *Houston,* 95 U. S. 697, said : "The failure of the engineer to sound the whistle or ring the bell, if such were the facts, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars, was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far

contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

In *Bellfontaine Railway Co.* v. *Hunter,* 33 Ind. 335, the court said: "In *North Penn. R. R. Co.* v. *Hiliman,* 49 Penn. St. 60, it was held to be the duty of the traveller approaching a railway crossing to look along the line of the railroad track and see if any train is coming; and if he fail to take such precaution, it is more than evidence of negligence—it is negligence itself, and the court should so charge the jury. This, indeed, is the true rule; for when it is determined as a legal proposition that one may not rush blindly upon the rails over which trains are passing, propelled by an agent serving its master almost at its own will, the neglect of this duty to use the physical senses is negligence, and not mere evidence of negligence."

See also, *Ernest* v. *Hudson River R. R. Co.,* 39 N. Y. 61; *Fletcher* v. *Atlantic & Pacific R. R. Co.,* 64 Mo. 484; *Brown* v. *Milwaukee & St. Paul Railway Co.,* 22 Minn. 165; *Baxter* v. *Troy, &c., R. R. Co.,* 41 N. Y. 502; *Allyn* v. *Boston & Albany R. R. Co.,* 105 Mass. 77; *Ormsbee* v. *Boston & Providence R. R. Corp.,* 14 R. I. 102; *Balt. & Ohio R. R. Co.* v. *Sherman's Adm'x,* 30 Gratt. 602; *Nash* v. *Richmond, Fredericksburg & Potomac R. R. Co.,* 82 Va. 55.

III. The next question relates to the admissibility of certain evidence. At the trial several witnesses for the defendant were each asked, upon cross-examination, whether or not they had made certain statements after being sworn as witnesses at the coroner's inquest over the body of the deceased, to which they each answered in the negative. The plaintiff at the proper time offered in rebuttal extracts from the depositions of these witnesses taken at the coro-

ner's inquest, which were admitted by the court; and the
defendant excepted. The evidence thus admitted related
to matters which were relevant to the issue, and, the proper
foundation having been laid, was rightly admitted. The
rule is stated by Greenleaf as follows: "The credit of a
witness may also be impeached by proof that he has made
statements out of court contrary to what he has testified
at the trial. But it is only in such matters as are relevant
to the issue that the witness can be contradicted. And
before this can be done it is generally held necessary, in
the case of verbal statements, first to ask him as to the
time, place and person involved in the supposed contra-
diction," &c. 1 Greenl. on Ev., § 462. The rule, however,
equally applies, whether the declaration of the witness
supposed to contradict his testimony be written or verbal.
3 Starkie's Ev. 1741; *Charlton* v. *Unis*, 4 Gratt. 58; *Unis* v.
*Charlton*, 12 Gratt. 484; *Conrad* v. *Griffey*, 16 How. 38.

IV. After the evidence on both sides had been intro-
duced, the court, on the defendant's motion, gave to the
jury the following instructions, which correctly propound
the law :

1st. "The court instructs the jury that the 'train's mere
speed of motion is not *per se* evidence of negligence, nor
is the fact that the train is behind time."

2d. "The court also instructs the jury that no failure on
the part of the railroad company to do its duty could
excuse the deceased from failing to use his senses of sight
and hearing on approaching the crossing in question." See
*N. & W. R. R. Co.* v. *Ferguson*, 79 Va. 241; *R. R. Co.* v.
*Houston*, 95 U. S. 697.

Several other instructions were also asked for by the
defendant, which were modified by the court, and, as
modified, were given. And it is contended by the defend-
ant, the plaintiff in error here, that the circuit court erred
in refusing to give the instructions as asked for without

modification. We do not deem it necessary to formally consider this assignment of error, as the principles applicable to the case have been already sufficiently stated.

The judgment must be reversed, and the cause remanded for a new trial to be had therein in conformity with the views herein expressed.

JUDGMENT REVERSED.