# CHARLESTON.

## WILLIAMSON v. NEWPORT NEWS & MISS. VALLEY CO.

*(LUCAS, President, absent.)

Submitted January 16, 1891.—Decided January 31, 1891.

RAILROAD COMPANY—DAMAGES—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK—BRAKEMEN.

W. was employed as a brakeman on a freight train by the C. & O. R'y Co. on the 4th day of April, 1886, and, when he applied for such service, stated that he had been employed for six months as brakeman on the same road in the year 1885. In July, 1886, the N. N. & M. V. Co. took charge of said road as lessee. On the 12th day of August, 1886, while on duty on top of his train in daylight, said W. was killed by striking his head against a highway bridge which spanned said railroad track, which was not high enough for a man erect on the car top to pass under. While he was in the service of said company on both occasions his run was between Huntington and Cannelton on a local freight train, and said bridge was between said points. When leaving Hurricane station on the morning of the accident, about ten minutes before reaching said bridge, he was warned by the fireman to look out for the overhead bridge, and was found dead about fifteen feet from the rear end of the car. In a suit by W's administrator against the N. N. & M. V. Co., defendant demurred to the evidence. *Held:* (1) That the demurrer was properly sustained. (2) That, although the defendant may not have been free from blame on account of lowness of bridge, yet W's want

*On account of illness

83

of proper care contributed to the injury, and defendant is not liable. (3) In entering the service of the defendant under the circumstances W. was fully aware of the character of the bridge, and while in said service had ample opportunity to become familiar with it, and by continuing in the employment he assumed the risk of being injured by said bridge, as incident to the employment.

*L. N. Tavenner* of counsel for plaintiff in error, cited : 30 W. Va. 34; 25 W. Va. 642; 8 W. Va. 515; 10 Leigh 164; 16 W. Va. 307; 11 W. Va. 14; Whart. Neg. § 525; Thomp. Neg. 1179, § 27; 80 N. Y. 622; 83 N. Y. 572; 32 W. Va. 37, p't 3, syll; 24 W. Va. 51,52, § 2; 128 U. S. 91.

*Vinson & McDonald* and *Gibson & Michie* of counsel for plaintiff in error, cited L. R. A. book 4, p. 710; 104 Ind. 88; 116 Ill. 206; 37 Kan. 701; 115 Ind. 378; 128 U. S. 91.

*Simms & Enslow* for defendant in error, cited Patt. R'y Acc. L. 307; 2 Am. Eng. R'y Cas. 243; Id. 240; 92 Pa 276; 1 Lans. 108; 50 Mo. 302; 51 Md. 47; 71 Mo. 164; 63 N. Y. 440; 125 Mass. 79; 6 Atl. Rep. 226; 104 Ind. 88; 37 Kan. 371; 35 N. W. Rep. 147; 34 N. W. Rep. 659; 11 N. W. Rep. 24; 18 N. W. Rep. 785; 128 U. S. 91.

ENGLISH, JUDGE :

This is a writ of error to a judgment of the Circuit Court of Cabell county, rendered on the 15th day of March, 1889, in an action of trespass on the case, in which B. Williamson, administrator of the estate of J. F. Williamson, deceased, was plaintiff, and the Newport News & Mississippi Valley Company, a corporation, was defendant. The plaintiff in said action sought to recover from the defendant company damages to the amount of ten thousand dollars for causing the death of the plaintiff's intestate, J. F. Williamson, by the negligence of the said defendant, and, as the plaintiff alleges, without any negligence on the part of said J. F. Williamson. The case was decided upon a demurrer to the evidence in the court below, which evidence is set forth in the record under the rule of practice which prevails in such cases; and, in considering the propriety of the action of the court below in sustaining the

demurrer to the evidence, the practice requires us "to consider the demurrant as admitting all that may be reasonably inferred by the jury from the evidence given by the other party, and as waiving all the evidence on his part which contradicts that offered by the other party, or the credit of which is impeached and all inferences from his own evidence which do not necessarily flow from it." *Muhleman* v. *Insurance Co.*, 6 W. Va. 508; *Lee's Ex'rs* v. *Bridge Co.*, 18 W. Va. 299; *Allen* v. *Bartlett*, 20 W. Va. 46; and *Garrett* v. *Ramsey*, 26 W. Va. 345.

It appears from an examination of the evidence under this rule, that the plaintiff's intestate was employed by the Chesapeake & Ohio Railway Company for about six months in the year 1885, and that he was employed by that company from the 4th day of April, 1886, until the 12th of August, 1886, each time acting as brakeman, and that while he was so employed in the year 1886 he was running on said freight trains between Huntington and Cannelton, W. Va.; that some time in July, 1886, said railway commenced doing business in the name of the "Newport News and Mississippi Valley Company," and was so operating said road at the time the plaintiff was injured. It also appears that at the time the plaintiff entered the service of the Chesapeake & Ohio Railway Company, on the 4th of April, 1886, that he agreed to study the rules governing employes on said road carefully, to keep posted and obey them; and on examination at that time, when asked "Do you know that bridges, including highway bridges and tunnels, on this line, are too low to clear a man standing on a box car?" answered "Yes." So far as the employes of said railroad were concerned, no changes appear to have been made in the rules, managment, and regulations. The name of the company managing the road was changed, and the vouchers were paid them after July, 1886, by the Newport News & Mississippi Valley Company.

How the plaintiff's intestate came to his death does not affirmatively appear, but circumstances would seem to indicate that his death ensued from coming in contact with a bridge which spans said railroad at a point between Hurricane and Milton stations. This is the theory claimed by

the plaintiff, and, assuming it to be the correct one, it appears from the testimony of the engineer, Poindexter, who was introduced by the plaintiff, that he saw the plaintiff's intestate at Hurricane; that he got up on his engine, and set his lantern down, about five o'clock in the morning on the 12th day of August, by standard time, which is twenty four minutes faster than sun time, and according to the evidence it would take about twelve minutes to run from Hurricane to the bridge. When the bridge was reached, then, it lacked twelve minutes by sun time of being five o'clock; and the court will take judicial cognizance of the fact that on the 12th of August, 1886, the sun rose at that place at seven minutes after five o'clock, so that it lacked about nineteen minutes of sunrise at the time said freight train passed under said bridge. He did not need his lantern, for the engineer, Poindexter, testifies that he left it sitting on the engine. He also states that it was a damp, cloudy morning; that the bridge was on a straight line, and, going west, it could be seen for a half mile. Mr. Keasel, who was a fireman on the train at the time, testifies that plaintiff's intestate said he was going on top of the car. That, as he went out, some cinders got in his eyes. He stopped and rubbed them; then came back down. Then he started back again. That nothing was said to him about going out, only he told him to look out for the overhead bridge. That he said something in reply, but witness did not know what it was. That he got upon the car, and stood for a minute in sight. Then he disappeared. And that from his position he could see a man on the cars ten or fifteen feet. That deceased was found lying about fifteen feet from the other end of the car.

As this unfortunate accident occurred in the day-time, and not at night, I do not regard the question as to whether the guards or whipping strings were in proper order at the time the injury occurred as material, because the office of these guards is to give warning of the fact that a bridge is near, when it can not be seen; but, if the question was material, it is clearly shown by the evidence of the plaintiff's witness Nugent that the guards were in proper condition at the time of the accident. It also shows that said bridge,

although not a county bridge, was used by the public, and that a county road passes over it. The greater portion of the rest of the evidence bears upon the question as to whether the plaintiff's intestate came to his death by coming in contact with said bridge, and, in my view of the case, must be regarded as immaterial. The plaintiff in his declaration, avers that the fact that the bridge under and through which said train passed was low and unsafe was unknown to said J. F. Williamson, but he utterly fails to sustain said averment by proof; while, on the contrary, said Williamson acknowledged at the time he took service from said company that he knew that bridges, including highway bridges and tunnels, on this line, were too low to clear a man standing on box-cars ; and at the very time he was approaching the bridge where he lost his life the witness Keasel called his attention, and told him to look out for the low bridge. How this unfortunate accident occurred must, to some extent, always remain a subject of conjecture. The evidence discloses that, when he left the engine to go on top of the cars, some cinders got in his eyes. That he stopped, and rubbed them; then came back down. Then he started back again. That he got on top of the car, and stood for a minute in sight. Then he disappeared. He may have gotten more cinders in his eyes. At any rate, he was delayed in returning to the engine, and rubbing his eyes, and standing again for a minute, after he reached the top of the cars again. And all this time the train was rushing on towards the bridge on a down grade, with no brakes applied; although Mr. Poindexter, when asked, "At what point was it the duty of the brakeman to put on brakes?" replied, "Generally about a mile beyond the bridge;" meaning, as I suppose, east of the bridge, as he was testifying in Huntington. The train was running towards the bridge, and, as a matter of course, the smoke and cinders from the engine would be between said Williamson and the bridge ; and, suffering from the cinders which had lodged in his eyes, it is but natural to suppose he would turn his side or his back to the smoke, and in this manner he failed to look out for the bridge, and was prostrated by it. Be this, however, as it may, the question presented for our consideration

and determination is whether, under the circumstances detailed in the evidence, the court below acted properly in sustaining the demurrer to the evidence.

In the case of *Sheeler's Adm'r* v. *Railroad Co.*, decided in 81 Va. 188, there was but one count in the declaration, the *gravemen* of which was that the deceased, a fireman in the employment of the defendant company, lost his life while in the discharge of his duty as such fireman by reason of the defendant's negligent and careless construction, at a point in the line of its road, of a bridge, the upright sides of which were not sufficiently distant from the engines and cars, when passing over same, to allow and permit the plaintiff's intestate, as such fireman, to properly discharge his duties as fireman without incurring unreasonable risk and danger to his life and limbs; and also that by reason of the defendant's carelessness and negligence in not properly constructing said bridges, and the upright sides thereof *etc.*, the plaintiff's intestate, while in the faithful discharge of his duty to said defendant, was thrown against a certain bridge, and the upright sides thereof *etc.*, and was killed by means thereof; and it was also averred that he did not know, and had no means of knowing, of the defects and dangers of said bridge, although the same were well known to the defendant. It appears from the evidence in the case that Sheeler, without orders, and unnecessarily, got down on the side of the engine and tender, holding with his right hand a hand-holder on the engine, and, holding in his left hand a small hose attached to a spigot on tender, swung his body out and forward in a stooping posture, and attempted to extinguish some greased woolen ravelings that were blazing on the box of the driving wheel, when he was struck by the side of the bridge and was killed. The court, in its opinion, says : "The settled doctrines is that in order to maintain an action against a railroad company for injuries received *etc.*, it must be proved that the injury was caused by the negligence of the defendant or its agents; and it must not appear from the evidence that want of ordinary care and prudence on the part of the person injured directly contributed to the injury—referring to 17 Amer. R. Rep. 253, and cases cited; also to *Railroad*

*Co.* v. *Furguson,* 79 Va. 248. And the court arrived at the conclusion that said Sheeler's administrator was not entitled to recover.

In the case of *Clark's Adm'r* v. *Railroad Co.,* reported in 78 Va. 709, the facts are very similar to the one under consideration. Clark was employed as a brakeman on a freight train ; and while in the performance of his duty on top of a car, by moonlight, he was killed by striking a highway bridge, not high enough for a man standing erect on the car-top to pass under. When he was employed, he had notice of highway bridges which were too low to pass under without stooping ; and on that night, leaving the station next the bridge, he was warned to look out for the bridge. On nearing the bridge, a co-brakeman, seeing him standing erect on the car-top, shouted to him to stoop ; but he did not stoop. In that case, as in this, there was a demurrer to the evidence ; and the court sustained the demurrer, holding that, "though defendant may have been culpable for lowness of bridge, yet Clark's carelessness contributed to the injury, and defendant was not liable ;" and also that "the risk of collision with such bridges was incident to the employment. Clark had opportunity to know of their dangerous character, which must have been contemplated when he accepted employment."

In the case of *Owen* v. *Railroad Co.,* 1 Lans. 108, it was held that a brakeman in the employ of a railroad company, while discharging duties in the line of his employment, upon the roof of a freight-car, who was carried against a highway bridge, and sustained injuries, for which he brought an action against his employer, the bridge being three and a half feet higher than the top of the highest freight-car in use by the company, and had so remained for many years, and since the construction of the railroad, the brakeman having entered into the employment of the company with knowledge of the position and height of the bridge, and having had opportunity of informing himself as to its continuance in the same position, he should have been nonsuited, the danger from the bridge being clearly incident to the labor he undertook to perform ; and that, "in view of the brakeman's knowledge as to the bridge, his omission

to avoid the accident by stooping was such want of ordinary care and caution as would have defeated his action, if otherwise maintainable."

In Wood's Railway Law (volume 3, p. 1481) the author says : "But where the servant knows, or ought to know, of the obstruction, he can not recover for an injury received therefrom, because by reason of his failure to guard against it, and neglecting to do so, he is treated as guilty of contributory negligence;" citing *Baylor* v. *Railroad Co.*, 40 N. J. Law, 23. The author also says, on the same page : "Thus, in the case last cited, a brakeman, called upon suddenly to apply the brakes to a train, was hit by the roof of a bridge over the road, and injured. The bridge was not high enough to permit a person to stand upright on the cars in passing through it, and it appeared it was not usual or customary for railroad companies to build their bridges with an elevation sufficient to enable a person to stand upright on the top of the cars in passing through them ; and the Court held there could be no recovery for the injury, upon the ground that the plaintiff was chargeable with knowledge of the method of building such bridges, and assumed the risk incident thereto." See *Gibson* v. *Railway Co.*, 63 N. Y. 449, where it is held that, "where a servant enters upon employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also those risks which are apparent to ordinary observation. If he accepts service with knowledge of the character and position of structures from which employes might be liable to receive injury, he can not call upon his master to make alterations to secure greater safety, or, in case of injury, hold him liable." See, also, the case of *Rains* v. *Railway Co.*, 71 Mo. 165, third section of syllabus, where it is held : "If a brakeman knows that a foot-bridge over the railroad upon which he is employed is too low to permit a man standing erect on the top of a freight-car to pass under it in safety, and nevertheless remains in the service of the company, and while passing under the bridge on the top of a freight-car, standing erect, and is killed by coming in contact with the bridge, the company is not liable." See, also, *Railroad Co.* v. *Sentmeyer*, 92 Pa. St. 276 ; *Railroad Co.* v. *Stricker*, 51 Md. 47.

That the plaintiff intestate had ample opportunity to become acquainted with this portion of said railroad, and with this particular bridge, is clearly shown by the evidence. When he made application for service as freight brakeman, on the 4th of April, 1886, he was asked, "Were you ever employed by this road; where, and in what capacity?" and answered, "Yes, sir; in the year 1885, about six months as brakeman;" and P. O. Pine, a witness for the plaintiff, when asked, "How long did Williamson run on this road?" answered, "I don't know; he was here twice;" and when asked, "Where did he run from?" answered, "From Huntington to Cannelton." The bridge at which it is claimed the injury was received is shown to be on the road between these two points; and Mr. Poindexter a witness for the plaintiff, stated that he was running a freight train between Huntington and Cannelton, and, when asked how often he passed under said bridge, answered, "I couldn't say. I pass under it sometimes twice every twenty four hours," clearly showing that employes on the freight trains between these points were not lacking in opportunity to become acquainted with this bridge. Counsel for the plaintiff in error rely upon the case of *Railroad Co.* v. *Rowan*, 104 Ind. 88 (3 N. E. Rep. 627); but it is clearly apparent that that case is very different from the one at bar. The second section of the syllabus reads as follows: "Where a railroad company has constructed and maintains a bridge over its track with knowledge that it is of insufficient height, and dangerous to its employes in the discharge of their duties, it is liable to a brakeman, ignorant of the danger, who is injured while passing under such bridge in the performance of his duties." And so with the case of *Kane* v. *Railway Co.*, 128 U. S. 91 (9 Sup. Ct. Rep. 16). The facts in that case are very different from the case under consideration. In that case a brakeman was injured by reason of a broken step to one of the cars, which caused him to fall from the train. The plaintiff ascertained the fact that the step was broken after the cars had started, and the conductor promised to drop the car out that had the broken step during the night, but failed to do so. The cars were simi-

lar, and the plaintiff was easily deceived as to the fact whether the car with the broken step had been dropped or not; and the Court held it error, on account of the peculiar facts connected with the case, to strike out the testimony from the jury.

In the case of *Cooper* v. *Railway Co.*, 24 W. Va. 51, relied upon by counsel for plaintiff in error, while it holds that the master is bound to use ordinary care in supplying and maintaining suitable instrumentalities for the work required to be done, it also is held in that case that "the ordinary risks and perils incident to the employment, which the servant can forsee or shun or avoid or guard against by prudence, skill, and forecast, are assumed by him, and they are supposed to enter into the consideration to be received by him for his services." And while it is true that in Illinois, and perhaps several other of the western states, it has been held that it is the duty of a railroad company to so construct overhead bridges as to prevent them from being dangerous to employes walking on the top of the cars in the performance of their duties, yet the great weight of authority in Virginia, New York, Iowa, Minnesota, Missouri, Maryland, Massachusetts, and New Jersey hold in accordance with the passage above quoted from 24 W. Va., in regard to assuming the risks and perils incident to the employment; and we must hold that, by continuing in the employment of the defendant after he had every opportunity of becoming acquainted with its dangers, he assumed the risks incident thereto.

Looking, then, at the facts disclosed by the evidence in this case, and applying the rules which requires us to disregard the evidence of the defendant which is in conflict with that of the plaintiff, and admitting all that might be reasonably inferred by the jury from the evidence of the plaintiff, my conclusion is that the court below committed no error in sustaining the demurrer to the evidence, and the judgment complained of must be affirmed with costs to the defendant in error.

AFFIRMED.