CHARLESTON.

CAWLEY v. RAILROAD CO.

Submitted January 23, 1888.—Decided February 25, 1888.

1. RAILROAD COMPANIES—NEGLIGENCE—CONTRIBUTORY.

In an action by an employe against a railroad company for injuries received in the service of the company, if the evidence of either the plaintiff or the defendant clearly shows, that the plaintiff was guilty of the negligence, which was the direct cause of the injury, there can be no recovery against the defendant.

2. RAILROAD COMPANIES—NEGLIGENCE—CONTRIBUTORY.

If in such case the jury finds for the plaintiff, and judgment is rendered by the trial-court on the verdict for the plaintiff after overruling the motion of the defendant for a new trial, this Court will, when the evidence of the plaintiff and the uncontradicted evidence of the defendant taken together plainly show that the plaintiff's negligence was the direct cause of the injury, reverse the judgment and grant a new trial.

*Knight & Couch* for plaintiff in error.

*T. B. & J. S. Swann* and *Kennedy & Littlepage* for defendant in error.

SNYDER, JUDGE:

Action on the case brought in the Circuit Court of Kanawha county by R. L. Cawley, a minor, by his next friend, against the Winifrede Railroad Company to recover damages for injuries alleged to have been caused by the negligence of the defendant. The defendant demurred to the declaration; and, the demurrer being overruled, issue was joined on the plea of not guilty. The case was tried by a jury, which returned a verdict in favor of the plaintiff for $3,500.00. The court, having overruled the motion of the defendant to set aside the verdict and grant it a new trial, on January 6, 1887, entered a judgment for the plaintiff on the verdict, and to said judgment the defendant has obtained this writ of error and *supersedeas.* All the evidence is certified in the bill of exceptions, and therefore, according to the settled rule, this Court will not reverse the judgment of the Circuit Court on the ground that the verdict is contrary to the evidence, unless, after rejecting all the conflicting parol evidence of the exceptor and giving full faith and credit to that of the adverse party, there is still insufficient evidence to sustain the verdict. *Black* v. *Thomas*, 21 W. Va. 709.

If, according to this rule, we eliminate the conflicting evidence of the plaintiff in error, the material facts proved in the case are substantially as follows: The defendant is a domestic corporation engaged in the business of transporting coal from certain mines on Field's creek, in Kanawha county, to the Kanawha river, and there loading the same into barges by means of a turn-table, tipple-track, drum-house, and tipple owned and used by the defendant company. The loaded cars of the company are first run upon the turn-table and then turned to connect with the tipple-track, which by a down grade lead to the cage where the cars are lowered to the barges. The car usually, upon the loosening of the brake, starts from the turn-table by its own gravity, but sometimes force has to be applied to start it either by pushing or pulling it, and when it started unusually hard by applying a crow-bar in the rear behind the wheel, and when the car was started it run by its own gravity to the cage. It was the duty of two hands called cage-riders to take the loaded cars,

one at a time, from the turn-table to the cage. In taking the loaded car to the cage it was the duty of one of the cage-riders to get upon the car, loosen the brake, and act as brakeman on its trip to the cage, and it was the duty of the other to assist, when any assistance was necessary in starting the car from the turn-table, and then proceed to a rope which hung suspended from a drum overhead about half-way between the turn-table and the cage and hold the same away from the track until the car passed by, and then follow the car to the cage. This rope hung clear of the floor and about two feet to the left of the left-hand rail of the track. There were holes in the floor of the drum-house between the rails of the tipple-track, and on the outside of the track the floor was not laid close up to the rails, but there are spaces between the rails and the floor. It was sometimes the custom of the cage-riders who assisted in starting the car to do it when standing between the rails of the tipple-track in front of the car by pulling the link or coupling and walk on the track to the rope and then step out on the left of the track and hold the rope away, and that defendant's superintendent had often seen this done without remonstrance or objection, but they usually started the car from the side. The loaded cars weighed several tons. The plaintiff went into the employ of the defendant about nine months before the injury complained of and continued therein up to the time of the injury. About the first half of that period he was engaged in taking the empty cars from the cage out on to a side track, and for the remainder of the time he was employed as one of the cage-riders and in unloading the cars into the barges.

On August 14, 1883, while so employed as a cage-rider, he was injured in the manner following: The plaintiff and one Lavender, his uncle, were the two cage-riders; that Lavender took his place at the brake on a loaded car upon the turn-table and loosened the brake; that the plaintiff assisted in starting the car by pulling at the lower left-hand corner, being the corner towards the cage, and on the same side of the track on which the rope was suspended; that directly after the car was started from the turn-table the plaintiff stepped in front of it and between the rails of the tipple-track and proceeded to walk down the track between the rails towards

the rope, and when some eight or nine feet in advance of the car, and about seventeen feet from the turn-table, he stepped with his right foot into a crack or space between the floor of the drum-house and the left-hand rail facing the cage of the tipple-track, and on the inside of said rail; that his foot was wedged in between said floor and rail so firmly that he could not extract it; that he called to Lavender, who attempted to apply the brake and stop the car, but was unable to do so until the car ran on to the plaintiff's foot; that when help reached him, the plaintiff was lying on the outside of the track, his right foot was on the left-hand rail, and the car had run upon his right heel; that he was taken home, and, after suffering great pain for two weeks, his leg was amputated a short distance below the knee,—it having been ascertained that his foot was so badly crushed that it did not have vitality enough to heal up, and mortification would have resulted if the amputation had not been performed; that at the place where the plaintiff was injured, the plank of the floor, between the rails of the track and next to the left-hand rail thereof, was so laid as to leave a space of three or four inches wide between said rail and plank which extended some fourteen or sixteen feet; that the said plank had been so laid before the plaintiff went into the employ of the defendant, and the location of said plank and the space between it and the rail had so continued up to the time of the injury without change, but a few days after the injury the floor at that place was relaid by the defendant so as to close said space in a large measure. And the plaintiff testified that the said spaces or cracks between the rails were known by him to be there from the time he entered the service of defendant up to the time of his injury. It was proved that with good brakes, dry track, and brake tender, all ready to apply the brake, with the brake-chain taut, the car on said track could be stopped in five or six feet; but that at the time the plaintiff was injured, Lavender, the other cage-rider, who was at the brake, did not have the brake-chain taut; that the same was loose, just as it had been unwound to allow the car to run off the turn-table, and when that was the case it would take longer to stop the car; that the brake on the car which injured the plaintiff was all right when the car was run on the turn-table, just before

starting down to the cage; also, that the plaintiff was 17 years of age when he was injured, and that his father and next friend in this action worked for defendant about said drum-house during the whole time the plaintiff was in the employment of the defendant. All these facts were proved on behalf of the plaintiff. The following facts, none of which are in conflict with any of the plaintiff's evidence, were proved by the defendant: It was not necessary for the plaintiff, in the discharge of his duties, to get in front of the loaded car or between the rails of the track; that it was the safe and prudent way to assist in starting the car by pushing in the rear or at the side of the car, and then proceed to the rope by walking down on the left-hand side of the track, and on the outside of it; that when the cage-rider thus assisted in starting the car, the most direct way to the rope was down the left-hand side of the track, and that there was a safe and good walk from the turn-table to the rope on the left-hand side of the track and outside of same; that the floor of the drum-house where the plaintiff was injured, and during the time of his employment, was safe and substantial and in as good condition as floors of drum-houses or tipples of coal operators on the Kanawha generally, and that it was necessary to leave a space between the floor and the rails of the track so that dirt and *debris* upon the floor would not obstruct the wheels of the car; that the outer edge of the flange of the car-wheel ran only about one fourth of an inch above the floor, and if the floor were tight immediately under the flange the car would be constantly obstructed by lumps of coal, dirt, etc., upon the floor. The foregoing are all the material facts proved by the evidence.

In *Riley* v. *Railway Co.*, 27 W. Va. 145, the plaintiff was acting as extra brakeman on the railroad of the defendant. He was 18 years of age, and while passing down a steep grade, which ran along a hill-side with a cut or bank on the one side and open on the other side, he was standing on the foot-board between the engine and the tender as it was his duty to do, and being told by the fireman to look at the brakes and see whether the wheels of the car were sliding, and just as he was in the act of looking over on the hill side to see whether the wheels were sliding he was struck by a

stump on the side of the road and injured. The defendant in that case asked the court to instruct the jury that if they believed it would have been safe to look at the wheel from the open side, while it was dangerous to do so on the hill side, and that it was practicable to see the wheels from either side, and the plaintiff knew or had reasonable opportunity to know and ought to have known that it was so, and yet chose to look over on the hill-side, then the plaintiff was guilty of contributory negligence, and the jury must find for the defendant, even if they further believe that some one on the engine told the plaintiff to look over and see whether the wheels were sliding. The Circuit Court refused to give this instruction, and upon a writ of error this Court held that such refusal was error, and for this error alone the judgment was reversed and a new trial granted. 27 W.Va. 152, 163.

That decision, it seems to me, is conclusive of the case before us. The facts in this case are much stronger against the plaintiff than they were in that case. There the plaintiff was not engaged in his ordinary duties, but in an emergency was acting temporarily as brakeman, and could not be supposed to be as well informed as to the dangers of that service as if it had been his ordinary work. Here the plaintiff had been engaged as cage-driver for over four months, and testifies that he knew all about its dangers. There was a good and safe way along the side of the tipple-track for him to pass from the turn-table to the rope, and that was his most direct way to the rope. But instead of taking this route and passing along outside of the track and away from all danger he, knowing the unsafe condition of the floor between the rails of the track, chose to go out of his way in order to get in front of the car and pass along the track between the rails to the rope. There is not a particle of evidence even tending to show that there was any emergency or necessity for him to do this. In doing so he was guilty of gross negligence, and this negligence was the direct cause of his injury. There is no evidence to show that the company was guilty of any default either in the construction of its drum-house or railroad track. The opening between the floor and the rail in which the foot of the plaintiff was caught seems to have been

necessary to prevent the obstruction of the track by the accumulation of coal, dirt, etc. But be this as it may, the duties of the plaintiff did not require him to pass over this space. If he had used the least care, or if he had not acted most recklessly, the defects in the drum-house floor, if there were any, could not have been the cause of his injury. It is not claimed that there was any fault or defect in the car or the brake or the efficiency of Lavender, the other cage-rider. If it be true that Lavender was negligent in not having his brake-chain wound up taut so that he might stop the car in the least possible time, this was the negligence of the plaintiff's co-servant and for which the defendant was not responsible. The plaintiff and Lavender were in precisely the same grade of employment and were co-servants in the most restricted sense of that term. Wood Mast. & Serv. § 435; *Madden* v. *Railway Co.*, 28 W. Va. 610. This case is in some respects very much like the case of *Downey* v. *Railway Co.*, 28 W. Va. 732, in which we held as a question of law the plaintiff was guilty of contributory negligence.

For the reasons before stated I am clearly of opinion that according to the facts proved the plaintiff here was guilty of contributory negligence, and that the verdict of the jury was not warranted by the evidence. This conclusion makes it unnecessary to consider the instructions to the jury, or any other question in the case. The judgment of the Circuit Court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

REVERSED. REMANDED.