# CHARLESTON.

## WOODELL *r.* WEST VIRGINIA IMPROVEMENT CO.

Submitted January 27, 1893.—Decided April 1, 1893.

1. CONSTRUCTION OF STATUTE PLEADING JURISDICTION BAR.
    Section 26, c. 125 of the Code reads as follows: "No formal defence shall be required in a plea. It may commence as follows : "The defendant says that.'" This section applies to pleas to the local jurisdiction as well as to pleas in bar. (p. 27.)

2. EVIDENCE—MOTION TO STRIKE OUT EVIDENCE—DEMURRER TO EVIDENCE PRACTICE.
    After the defendant has given in his evidence or a material part thereof, his motion to strike out all the evidence, or plaintiff's evidence, on the ground that it is not sufficient to sustain the issue on plaintiff's part, should not be granted, but he should be left to his demurrer to the evidence. (p. 31.)

3. INSTRUCTIONS—REVERSAL OF JUDGMENT.
    When the Court instructs the jury, that, if they believe from the evidence certain hypothetical facts mentioned in the instructions, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which being believed from the evidence would require a different verdict, such instruction is erroneous and, if excepted to and not cured, is ground for reversal. (p. 49.)

4. DAMAGES—WAIVER OF CLAIM—EMPLOYER AND EMPLOYE—RAILROAD COMPANY.
    When an employe on a construction train of a railroad company has knowledge of any danger connected with his employment, which may be avoided by the use of ordinary care, and appreciates the danger to which he exposes himself, if he continues in such employment after such knowledge without protest or complaint on his part or promise on the part of such railroad company that such danger shall be removed, he will be

held to have assumed the risk of such danger and to have waived all claims for damages in case of injury. (pp. 47, 49.)

5. Cases and instructions involving the doctrine of contributory negligence and the doctrine of assumed risk of injury by continuing in the employment after knowledge of the danger, discussed. (p. 40.)

John A. Hutchinson, John Brannon and W. W. Brannon for plaintiff in error:

I.—*Affidavit of a corporation to such a plea as this can not be required.*—13 Gratt. 61; Sto. Eq. Pl. 235; 1 Pot. Corp. § 209.

II.—*Comparative negligence not to be considered.*—27 W. Va. 285; 16 W. Va. 307; Beach Law R'ys § 971; 5 Am. St. Rep. 321; 44 Am. & Eng. R'd Cas. 567; Big. Torts 306; 48 Am. & Eng. R'd Cas. 170; Beach Cont. Neg. (2nd. Ed.) 100; 34 W. Va. 657; Id. 666; 24 W. Va. 37, 51.

III.—*Instructions.*—117 U. S. 621; Pat. R'y Acc. §§ 334, 335.

IV.—*Knowledge on the part of the injured party of the danger to which he is exposed is the essence of contributory negligence.*—18 W. Va. 579; Beach Cont. Neg. § 36.  *Forgetfulness no excuse.*—Beach Cont. Neg. §§ 37, 188. *Knowledge on the part of employer and ignorance on the part of employe both essential.*—Beach Cont. Neg. § 345; 105 N. Y. 591; 44 Hun 72; 35 Hun 347; 91 Ala. 112; 87 Ala. 719; 15 Am. St. Rep. 781; 11 Am. St. Rep. 58; 150 Mass. 125; 147 Mass. 484; 143 Mass. 197; 110 Mass. 259; 84 Va. 747; 34 W. Va. 657.

W. B. McGary and John J. Davis for defendant in error:

I.—*Plea in Abatement.*—10 W. Va. 507.

II.—*Exclusion of evidence.*—3 W. Va. 156; 8 W. Va. 553.

III.—*Duty of railway company to employes.*—27 W. Va. 146; 100 U. S. 213; 81 Va. 71; 24 W. Va. 37, 52, 54; 22 S. E. Rep. 738.

IV.—*Contributory negligence.*—31 N. E. Rep. 282; 21 Am. St. Rep. 107; 49 N. W. R. 655; Hay. 112; 12 D B. & M. 434; 14 Am. & Eng. Ency. L. 831; Id. 871; 28 W. Va. 732; 34 W. Va. 513; Pat. R'y Acc. § 289.

HOLT, JUDGE:

This was an action of trespass on the case brought December 31, 1891, in the Circuit Court of Lewis county by the administrator, Woodell, against the West Virginia Improvement Company for negligently causing the death of plaintiff's intestate, Elmore Graves, resulting in a verdict for plaintiff for three thousand dollars, and brought here by defendant on writ of error.

The defendant filed a plea in abatement to the jurisdiction of the Circuit Court of Lewis county. On motion of plaintiff the court struck out the plea as insufficient, which is the first error complained of. The plea is as follows:

"Plea in Abatement. January Rules, 1891. The West Virginia Improvement Company *ads.* William S. Wooddell, Administrator of Elmore Graves, deceased.

"And the West Virginia Improvement Company, the defendant, being a corporation existing as such under the laws of the State of West Virginia comes and under its corporate seal says, that this court ought not to take or have any further cognizance of the action aforesaid of the said plaintiff, because the said defendant says that the supposed cause of action did not, nor did any part thereof, arise in the said county of Lewis, but the supposed cause of the said action, and every part thereof, did arise within the county of Upshur, in the state of West Virginia, and that at the time of issuing of said writ in this cause the said defendant did not reside in the said county of Lewis, nor did it have its principal office in the said county of Lewis, nor did its president or other officer reside in said county of Lewis, but that its president and other chief officer then, ever since, and now reside in the county of Wood, in the state of West Virginia, and that its principal office was then, ever since, and is now in the said county of Wood, in the state of West Virginia; and this the said defendant is ready to verify. Therefore the defendant prays judgment whether this court can or will take any further cognizance of the action aforesaid.

"[SEAL.]     JOHN BRANNON, P. D."

"State of West Virginia, Lewis county, to-wit:

"This day J. A. Fickenger appeared in person before me, a notary public of said county and state aforesaid, and made oath that the facts and allegations stated in the foregoing plea are true to the best of his knowledge and belief.

"Given under my hand this 7th day of January, 1891.

"J. B. BRANNON, Notary Public."

If this plea to the local jurisdiction of the court had begun: "And the West Virginia Improvement Company, by Harry P. Camden, its president, comes," etc, it would have been a good plea in such case according to the ruling in Quarrier v. Insurance Co., 10 W. Va. 507–520, and as we still hold. I give the plea in full because the body of it seems to be perfect save that defect, if that be a fatal defect. It denies each and every fact that could give the court local jurisdiction, and gives the plaintiff a good writ by averring facts giving to the county of Upshur and the county of Wood jurisdiction, and showing that no other court has it.

Plaintiff's declaration expressly avers that the cause of action arose in the county of Upshur; so does the plea—thus giving the court of Upshur jurisdiction under section 2, c. 123, Code. The return of a writ of summons issued by plaintiff, and returned duly executed on the president of the company at Parkersburg, Wood county, by the deputy sheriff of that county, shows that the president, the chief officer, resides in Wood county. The plea avers that fact, and also avers that the company's principal office is in Wood county, thus giving the court of Wood county jurisdiction under second clause of section 1, c 123, Code. In addition the plea also avers that the supposed cause of action did not, nor did any part thereof, arise in the said county of Lewis; that at the time of issuing the writ, ever since, and now the defendant did not reside in the county of Lewis, nor its president and other chief officer, nor did it have its principal office in Lewis, etc.

The defendant corporation in this plea appears and speaks in its proper name, and under its corporate seal, as near a personal appearance as is possible. Having no

physical, tangible body, it can not literally appear *in propria persona sedente curia;* but a regular attorney of the court, who has a general license and authority from the courts, and from that particular court, having qualified by taking the oath required to appear for defendant, signs it and vouches for it.

In civil cases generally the practice of appearing in proper person has long been out of practice, the reason for it having ceased. Long ago he must have asked leave of the court before he could appear by attorney, and when he appeared in person to ask special warrant or leave, as it then had to be, to appear by attorney, by that act he gave the court jurisdiction, and thereafter the plea in abatement would come too late; hence he had to plead in abatement to the jurisdiction in proper person. Literally this could not be done by a corporation, and I have found no other authority in the books saying that in such case it must appear by its president or other chief officer, but rather making it on that account an exception, and authorizing the corporation in such case to appear by attorney.

1. Our law and practice as it now is seems to require a relaxation of such a rule, and uniformity and general convenience require it, if not against law. The statute says any corporation may sue and be sued, plead and be impleaded. Code. c. 52, s. 1.. It (the defendant) may plead in abatement and in bar at the same time. Code. c. 125, s. 21. It shall not be necessary in a second or other plea to state that it is pleaded by leave of the court. Id. s. 27. And no formal defence (resistance or denial) shall be required in a plea. It may commence as follows: "The defendant says that." These were taken from the rules of the English judges of 1834. "The defendant comes," *etc.*, was the statement on the record of the defendant's appearance; but this has been decided to be no part of the plea; so that, if defence ("and defends the wrong and injury") were made without it, it would be good; for the defendant's making defence shows him to be in court and makes him a party to the plea, particularly where he appears to be *in custodia.* 1 Chit. Pl. top p. 444. Connusance, in the strict sense, that is, by a third person, in the beginning is not necessary but im-

proper (Id. p. 438) and with us imparlances—saving to himself all exceptions, *etc.*—have been abolished, in effect at least (see Gen. Rules Hill. T., as referred to in Chilt. Pl. p. 445, from which our rules are taken). If, then, section 26, c. 125, applies to such pleas to the jurisdiction, it needs no statement of appearance, no formal defence, but commences as follows: "The defendant says that,"—here follows the matter of defence according to the fact (and it requires no other statement of appearance) setting out with strictness the facts, which show the court has no jurisdiction, and the facts, which give the plaintiff a better writ—concluding as this plea does, that the court will take no further cognizance of the action. See *Hortons* v. *Townes*, 6 Leigh, 47, decided in 1835, before our present statutory rules on the subject.

2. This plea is signed by an attorney, an officer of the court, who is responsible for it, and in that sense, or rather to that extent, it purports to be by attorney. To first ask leave by special warrant to appear by attorney for any purpose has long passed away in this State, together with the reasons on which it was founded. The attorney now has a general license to practice law, signed by three of the judges of the State (Code, c. 119, s. 1) and is required to take an oath as an officer of each court, in which he proposes to practice (Id. s. 3). His general license and oath of qualification in the particular court constitute his license and warrant to appear for parties in court, and no other is needed or required.

3. The plea to the jurisdiction, where not a plea in bar, must be filed at the day of the writ returned executed, or declaration filed at or before a plea in bar, *etc.* (Code, c. 125, s. 16). The court is not then in session (with us generally.) No leave can be obtained of the court to appear by attorney or by any one else, when court comes on, for it is then too late, and the clerk can not grant it, for he acts only as a ministerial officer; and imparlances, general, special and all kinds being abolished, the defendant can not save his right to plead thereafter in abatement to the jurisdiction. See Gould, Pl. c. 22, §§ 17–20; 3 Bl. Comm. c. 20.

4. This plea is in accord with modern pleading on the same subject, and subserves general convenience in other respects. Our statute, taken from 4 Ann., c. 16, § 11, requires such plea to be verified by affidavit (section 39, c. 125, Code) and under that statute it was long ago held, that it is not necessary, that the affidavit should be made by the party himself, as it could not be in the case of a corporation. If it be made by his attorney, it is sufficient; for that affords probable cause to induce the court to believe, that the plea is true, which is all that is required by the statute. *Foxwist* v. *Tremaine*, 2 Wms. Saund. 210d, citing *Lumley* v. *Foster*, Barnes, Notes Cas. 344. So a plea in abatement for misnomer by attorney without any special warrant has been held good. *Rex* v. *Shakespeare*, 10 East, 85, cited 1 Saund. Pl. & Ev. 2.

We have already seen that there need be no formal appearance or formal defence. " The defendant says that," followed by the proper and sufficient averments, which show that the court has no jurisdiction, and give the plaintiff a better writ with a proper conclusion ("This he is ready to verify,") and prayer that the court will not take further cognizance of the action, averred with sufficient certainty, pleaded in time, and properly verified by affidavit, ought at this day to be regarded as a good plea, containing, as it does, all the matter of both form and substance that the utmost strictness and care under our statutory changes in the rules of pleading now require. There is nothing in the letter of section twenty six which excludes such a plea to the local jurisdiction of the court, any more than a plea in bar for, say, want of jurisdiction of the subject-matter; for the other sections name the corporation as a defendant, and we can see no reason why the defendant corporation should not be within the meaning of the rule, nor why it should not comprehend such pleas as well as pleas in bar.

This statute on the subject is not referred to in the case of *Quarrier* v. *Insurance Co.*, cited above. The spirit, in which the revisors of 1849 approached this subject, was that there was much of value in the accumulated wisdom of former ages. This they aimed to preserve. At the

same time they lopped off useless fictions and objectionable subleties with an unsparing hand, on the subject of pleading, adopting in the main the changes made by the rules of Hillary term, 1834, and among them section 26 of chapter 125, as we now have it. As to form of plea by corporation appearing by attorney, see 5 Rob. Pr. 23; *Harvey* v. *Insurance Co.* (W. Va.) 16 S. E. Rep. 580.

We are therefore of opinion that the body of this plea is good, but it is proper to add that we are also of opinion that the form suggested in *Quarrier* v. *Insurance Co.*, in which the corporation appears by its president in such a plea, is also good, as pointed out and suggested in that case.

But the affidavit to the plea under consideration is bad, and it was for that reason and that alone properly rejected. If it had said that he (affiant) was the agent or attorney, *etc.*, of defendant, that he knows the contents of said plea, that he has no personal knowledge of the facts and allegations therein contained, but that he has been informed and believes them to be true, or making it on his own knowledge according to the facts, this would have been in accordance with the form of affidavit for verification of pleading given and permitted by section 42, c. 125, of the Code.

In this plea all the facts are averred positively and directly without any qualification of knowledge, information, or belief, and is in that respect strictly correct. But the *jurat*, or rather certificate of the oath taken, is "that the facts and allegations stated in the foregoing plea are true to the best of his knowledge and belief." The affiant does not say that he has any knowledge or belief on the subject, or any information which he believes to be true, nor is any reason given why he has or should have any knowledge or belief on the subject. It is consistent with very little or no knowledge, and expresses no belief. See *Stadler* v. *Parmlee*, 10 Iowa, 23–26.

The second and third errors assigned are that the court refused to strike from the record the return of P. H. Cummings, deputy sheriff, on the writ of summons; but the court permitted the officer to amend the return so as to

conform to the fact, and overruled defendant's motion. In that there was no error, nor could it prejudice the defendant; for the writ had also been served on the president of the company where he resided, and where its principal office is, and it was then too late to again plead in abatement.

The fourth error assigned is that the court erred in refusing to exclude from the jury the evidence of the plaintiff. But this was not error for two reasons: (1) Defendant had given in at least a part of his own evidence before he made his motion. "After the defendant has given in his own evidence, a motion to strike out all the evidence on the ground that it is insufficient to sustain the issue on the part of the plaintiff should not be granted." *Carrico* v. *Railroad Co.*, 35 W. Va. 389 (14 S. E. Rep. 12.) Such motion is equivalent to a direction to the jury to find for the defendant on the ground that the evidence of plaintiff is clearly insufficient to warrant the finding of a verdict for plaintiff. (2) I think the motion was properly overruled for reasons hereafter given, for the courts take the case from the jury only when it is susceptible of but one just opinion. The case must be so clear against the plaintiff as to warrant no other inference. *Teipel* v. *Hilsendegen*, 44 Mich. 462 (7 N. W. Rep. 82); *Mynning* v. *Railway Co.*, 67 Mich. 677 (35 N. W. Rep. 851).

On this head in a case for negligence the remarks of Judge Cooley in *Railroad Co.* v. *Van Steinburg*, 17 Mich. 99–118, are quite pertinent: "As a general rule it can not be doubted that the question of negligence is a question of fact and not of law (citing many authorities.) Negligence, as I understnd it, consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury. The injury is therefore one which must take into consideration all these circumstances, and it must measure the prudence of the parties' conduct by a standard of behavior likely to have been adopted by other persons of common prudence. Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party

injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable, if the injury has resulted from the action of another which he could not reasonably have anticipated. Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not. It is evident that such a problem can not usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury." See on same subject, Beach, Contrib. Neg. (2d Ed.) c. 16, § 444 *et seq.*

The remaining assignments of error involve the main points in the case, and related to the facts and to certain instructions given for the plaintiff and instructions asked for by the defendant which the court refused. The facts of the case as they appear from all the evidence on behalf of plaintiff and the uncontradicted evidence of defendant are as follows:

The defendant, a construction company, was, in December, 1890, engaged in constructing a railroad in Upshur county up the Buckhannon river, and was then engaged in laying the track. The track where the accident occurred was through woods, where the location had been twice changed, a mere skeleton track constructed to haul material between the stations Ten Mile and Alton, about two miles from the former. Elmore Graves, plaintiff's intestate, was in the employment of the construction company as brakeman, and had been in such employment some ten days or two weeks before the accident which caused his death. This was caused by a limb of a tree standing near the track, which limb projected over the track so as to reach about half way across the top of a box car, and about three or four feet from the top of such car. The deceased was a stout young man about twenty one years of age, in fine physical condition, and then earning about $1.50 per day. He had been over

the road where this limb projected about twice a day, more frequently on flat cars or gondolas, but also on a box-car; but the witnesses were not able to say how often. The limb was plainly to be seen in daylight. The deceased knew of it A few days before the accident he said to one of plaintiff's witnesseses it was dangerous, and ought to be cut down. About four days before the accident the conductor told the deceased that he must guard against the limb until it was cut down. It could be avoided, by being cautious, while on top of a box-car, by stepping to one side, but it was dangerous to step aside while the train was running. The superintendent who had charge of the tracklaying and ballasting along there had directed his men to remove it, but they had neglected to do so; but he was not engaged in clearing the track. On December 11, 1890, early in the morning, the train with one box-car was running at the place of the accident up grade at a rate of ten or twelve miles an hour. Elmore Graves, as brakeman, was on top of the box-car. It was cold and dry. It was hardly yet light. The wind was blowing the smoke from the engine back in Graves's face. He had a lantern. He was at his proper place as brakeman, but it was up grade, and did not need braking at that place. As the box-car passed the limb it struck Graves in the stomach, knocking him off the car, from the effects of which he died that evening. The box-car was used as a kind of caboose to haul the workmen. There were twenty five in it at the time, singing and dancing. Elmore Graves, deceased, and McIntosh, his fellow brakeman, who was also knocked off but not killed, were on the top singing After the accident the deceased told a witness that he and McIntosh were singing and talking all the way, and that he had forgotten about the limb being there that knocked him off.

The following are the instructions given for plaintiff and defendant; instructions asked by defendant, but modified before being given, against defendant's objection; and the instructions asked by defendant, but refused:

Instruction given for plaintiff: "The court instructs the jury if they find from the evidence that the decedent, Elmore Graves, while in the employment of the defendant

as brakesman on its train of cars, was killed while on duty, the law will presume, in the absence of contrary evidence, that the deceased exercised due care."

Instruction No. 2 given for plaintiff: "The court further instructs the jury that it was the duty of the defendant not to expose the said Elmore Graves, as a brakeman on its train of cars and while in its employ, to perils or hazards, against which he could be guarded by proper diligence on its part, and that the said defendant was bound to exercise ordinary care not only in supplying but maintaining, for the use of its employes on its said cars, while in its service, sound and suitable machinery, roadway, structures, and instrumentalities, including a safe track."

Instruction No. 3 given for plaintiff: "The court further instructs the jury that by 'ordinary care' is meant such watchfulness, caution and foresight as, under all the circumstances of the particular service, a corporation controlled by prudent and careful officers ought to exercise."

Instruction No. 6 given for plaintiff: "The court instructs the jury that, though a servant in the employ of another assumes the natural and ordinary risks of his employment, he does not assume or contract against the negligence of his employer."

Instruction No. 8 given for plaintiff: "If the jury believe from the evidence that there was a tree standing upon or alongside of the defendant's railroad in dangerous proximity to the track or cars or engines and tender passing over said track, and that from said tree a limb projected over the said track as far as the string board upon the top of the box car and to the center of the said car attached to the train, upon which Elmore Graves was employed as brakeman, and that in consequence of said projecting limb and the proximity of said tree to said track the risk of injury to the said Elmore Graves in the discharge of his duties of brakeman was increased beyond the risks incident to such employment, and that said tree and projecting limb were allowed to remain there after the defendant company, or any person in authority representing said company in this respect, knew of its situation, or might by the exercise of reasonable care and diligence have known

thereof; and if they further believe that the said Graves received the injury which resulted in his death by being struck and knocked to the ground from the top of said car by said limb after the defendant knew or might have known by the use of ordinary care and diligence of its situation, and that the said Graves at the time he received the injury which caused his death was exercising ordinary care and prudence as a brakeman, and was in the discharge of his duties as such, at the time he was so struck and knocked from said box-car—then the defendant is liable, unless the jury further find that said Graves, knowing the danger to which he was exposed, negligently failed to exercise due care and prudence to avoid it.

Instruction No. 9 given for plaintiff: "The court instructs the jury that, although Elmore Graves, when he entered the service of the defendant company as brakeman, assumed all the ordinary and natural risks incident to the employment in which he was engaged, he did not assume or take the chances of any negligence on the part of the defendant company, his employer; and if the jury believes from the evidence that the defendant was negligent in omitting any legal duty it owed to the said Graves as its employe, and the injury which resulted in the death of said Graves was due to any such negligence on the part of the defendant, without fault or negligence on the part of said Graves—then the defendant is liable, and the jury must find for the plaintiff."

Instruction No. 1 given for defendant: "If the jury find from the evidence that the deceased Elmore Graves, engaged in the service of the defendant, a construction company, to construct a railroad from Buckhannon south, as a brakeman on its construction train, and while so employed thereon as such brakeman he knew of the projecting limb which caused his injury, that it was dangerous, and so spoke of it as dangerous, and thereafter continued in such service, and was thrown by it from the car on which he was so acting by said limb, then the jury should find for the defendant."

Instruction No. 2 given for defendant: "If Elmore Graves, the deceased, knew of the exposure to danger in

serving as brakeman for the defendant upon a train having to pass a tree with overhanging branch insufficiently high to permit him to pass under it while standing at full height on top of a box-car, and with such knowledge consented to and did continue in the service of defendant as brakeman, and was thereafter killed by coming in contact with said branch, then the plaintiff can not' recover in this action and the jury must find for the defendant."

Instruction No. 3 given for the defendant: "Although the jury may find from the evidence that the defendant was guilty of negligence in not removing the limb which may have projected over a part of the top of the car of the train on which the deceased was employed as brakeman, yet, if they further find from the evidence that the deceased had full knowledge of the projecting limb, and some days before the injury spoke of it as dangerous, and as likely to cause hurt unless he avoided it, and with such knowledge and apprehension continued in such service on such train, and was injured on said car by coming in contact with such limb, then the deceased was guilty of contributory negligence, and the jury must find for the defendant."

Instruction No. 6 given for defendant: "If the deceased, Elmore Graves, while in the discharge of his duty as brakeman, passed under the tree in question twice a day, or frequently, during his employment, before the accident, and knew the danger of coming in contact with said tree, and his attention had been called to the danger of injury from the lowness and proximity of the limb of said tree, and he had himself, two or three days before the injury, spoken to others of the dangerous position and nature of said tree to one standing on a box-car, and with this knowledge he stood or remained erect on the box-car, and, while so standing or walking erect there, was, in passing, struck by said limb of said tree and killed, then the jury are instructed that this was contributory negligence on the part of the deceased, Elmore Graves, and that the plaintiff can not recover in this action."

Instruction No. 8 asked for defendant: "If the jury find from the evidence that the defendant was guilty of negli-

gence by allowing the tree with its projecting limb to remain in dangerous proximity to the roadway of the defendant, and that the deceased was knocked off the box-car and injured by coming in contact with said limb on his passing train, yet the plaintiff is not entitled to recover in this action, if the jury further find from the evidence that the deceased for some days before the accident had been fully apprised and made aware of the dangerous position and character of said limb, and the probable danger that might result to him in passing it on his train, and spoke of such danger to others, the continuing of the deceased in such service, after such knowledge and anticipation of danger, constituting contributory negligence, and the jury must find for the defendant, unless the jury shall further believe from the evidence that the defendant was told or knew that said limb was dangerous, and promised to have the same removed."

Instruction No. 9 asked for defendant: "If the jury find from the evidence that the deceased voluntarily entered into the service of the defendant as brakeman upon its construction train, then he is held and must be taken to have assumed not only all risks ordinarily incident to the business, but also all other open and visible risks, whether usually incident to the business or not; and if a visible limb caused his injury, partly over roadway of the defendant, the fact that he had forgotten its existence, or failed to remember it, and thus suffered the injury, furnishes no excuse for the deceased."

Instruction No. 8 as given for defendant, modified against its objection: "If the jury find from the evidence, that the defendant was guilty of negligence by allowing the tree with its projecting limb to remain in dangerous proximity to the roadway of the defendant, and that the deceased was knocked off the box-car and injured by coming in contact with said limb on his passing train, yet the plaintiff is not entitled to recover in this action, if the jury further find from the evidence, that the deceased for some days before the accident had been fully apprised and made aware of the dangerous position and character of said limb, and the probable danger that might result to him in passing it on his

train, and spoke of such danger to others, the continuing of the deceased in such service, after such knowledge and anticipation of danger, constituting contributory negligence, and the jury must find for the defendant."

Instruction No. 9 as given for the defendant, modified against its objection: "If the jury find from the evidence that the deceased voluntarily entered into the service of the defendant as brakeman upon its construction train, then he is held and must be taken to have assumed not only all risks ordinarily incident to the business, but also all other open and visible risks, whether usually incident to the business or not; and if a visible limb caused his injury, partly over the roadway of the defendant, the fact that he had forgotten its existence, or failed to remember it, and thus suffered the injury, furnishes no excuse for the deceased, and the jury should find for defendant."

Instructions asked for by defendant, but refused: "No. 1. If the jury find from the evidence that the deceased, Elmore Graves, engaged in the service of the defendant, a construction company, to construct a railroad from Buckhannon south, as a brakeman on its construction train, and while so employed thereon as such brakemen he knew of the projecting limb which caused his injury, that it was dangerous, and so spoke of it as dangerous, and thereafter continued in such service, and was thrown by it from the car on which he was so acting by said limb, then the jury should find for the defendant."

"No. 2. If Elmore Graves, the deceased, knew of the exposure to danger in serving as brakeman for the defendant upon a train, having to pass a tree with overhanging branch insufficiently high to permit him to pass under it while standing at full height on the top of a box-car, and with such knowledge consented to and did continue in the service of defendant as brakeman, and was thereafter killed by coming in contact with said branch, then the plaintiff can not recover in this action, and the jury must find for the defendant."

"No. 5. Although the jury may find from the evidence that the defendant was guilty of negligence in not removing the limb which may have projected over a part of

the top of the car on which deceased was employed by defendant as brakeman, and while so engaged he knew of such projection, that it was dangerous to him, and declared it was dangerous while so acting, and with such knowledge he continued in such service, then the jury should find for the defendant."

"No. 11. If the jury find from the evidence that the deceased, Elmore Graves, was killed by the projecting limb in question, of which he had knowledge and notice prior to the time of the accident, and had been warned against as dangerous, the fact that the accident may have occurred in the early morning, or in the midst of smoke, without any intervening negligence on the part of the defendant, does not constitute any excuse for the contributory negligence of the deceased "

The case turns mainly on the doctrine of continued service as a waiver of the risk of danger after knowledge of such risk, and of contributory negligence, as may be inferred from the evidence and the instructions given. The cases on the subject are very numerous, and books and cases abound in discussions of the subject, giving definitions of contributory negligence and applying the doctrine to a great multitude of particular facts. The cases are so various in their facts and circumstances, that the application of the rules creates often a great perplexity, although the definition or description in a general way of what constitutes contributory negligence seems simple enough.

Contributory negligence, when set up as a defence to an action for injuries alleged to have been caused by the defendant's negligence, is defined in Black's Law Dictionary as meaning "any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred." And the reason that such contributory negligence constitutes a bar to recovery is that the statute (section 5, c. 103, Code) gives the remedy in such cases only as would have entitled the party injured to maintain an action if death had not ensued,

(Cooley, Torts, 2d Ed. 308) and the party injured could himself have maintained no such action, because the party's case would show wrong in himself in the very matter whereof he complains, and public policy thus far has denied recovery in such cases. Bish. Non. Cont. Law §§ 458, 460 *et seq.* Beach Con. Neg. discusses the doctrine fully, citing a very large number of cases. For a definition, see page 14 (2d. Ed.) Whart. Law Neg. §§ 300, 406; 2 Thomp. Neg. c. 23, p. 1104; 1 Shear. & R. Neg. (4th Ed.) § 61 *et seq.;* Patt. R'y Acc. Law, c. 2, § 44 *et seq.;* 4 Amer. & Eng. Enc. Law, 15

Our own cases on the subject of contributory negligence are quite numerous. In *Blaine* v. *Railway Co.,* 9 W. Va. 253, it was held that the negligence of plaintiff that defeats a recovery must be the proximate cause of the injury.

In *Snyder* v. *Railway Co.,* 11 W. Va. 14, it was held that negligence in the plaintiff contributing to the loss is a defence at common-law, the benefit of which defendant may avail himself of in a proper case.

In *Snoddy* v. *City of Huntington,* 37 W. Va. 111 (16 S. E. Rep. 442) it was held that in an action for injury, if the negligence of the plaintiff contributed to produce the injury complained of, that is purely a matter of defence, and the burden of proof is on the defendant; and if it appear that such negligence of the plaintiff was the proximate cause of the injury, the plaintiff can not recover.

In *Washington* v. *Railroad Co.,* 17 W. Va. 190, negligence is defined, and it is also said that it is a general, if not a universal, rule that if the plaintiff has been guilty of contributory negligence, he can not recover. "By 'contributory negligence' is meant such negligence on the part of the plaintiff as contributes to the injury—that is, directly; in fact, causes it."

In *Fowler* v. *Railroad Co.,* 18 W. Va. 579, it is held: "The negligence of the plaintiff, which will defeat his recovery, must be a proximate cause of the injury. His negligence must be such as he could under the circumstances reasonably anticipate would result in his injury." See *Tompsom* v. *Board,* 21 W. Va. 224.

In *Cooper* v. *Railroad Co.,* 24 W. Va. 37, it was held that

it is the duty of a railroad company not only to furnish reasonably well-constructed and safe machinery and appliances for its cars for the use of its employes engaged in operating its road, but also exercise continued supervision over the same to keep them in good and safe repair, and that the railway company can not divest itself of this duty.

In *Johnson* v. *Railroad Co.*, 25 W. Va. 570, it was held that in most cases negligence is a mixed question of law and fact, which must be left to the jury. That where the case made by the evidence is such, that reasonable men unaffected by bias or prejudice would agree concerning the presence or absence of due care, the court would be justified in saying that the law deduced the conclusion accordingly; and if the facts are unambiguous, and there is no room for two honest and apparently reasonable conclusions, the court should not be compelled to submit the question to the jury as one in dispute. It also held that plaintiff makes out a *prima facie* case by proving negligence of defendant, and need not prove due care on his own part, and that, if plaintiff is guilty of contributory negligence not appearing, the proof thereof must come from the defendant; in other words, that contributory negligence is matter of defence, and the burden of establishing it is upon the defendant. See Beach, Contrib. Neg. (2d Ed.) § 426.

In *Dimmey* v. *Railroad Co.*, 27 W. Va. 32, it is held that if the declaration shows on its face that the plaintiff's negligence contributed directly to, and in fact caused, the injury complained of, it will be held bad on demurrer.

In *Riley* v. *Railroad Co.*, 27 W. Va. 145, it is held to be the duty of the railroad company not only to furnish a reasonably well constructed and safe railway and track for the use of its employes, but it must also exercise continued supervision over the same, and keep them in good and safe repair and condition; and that such duty can not be delegated so as to relieve the principal; that such middle man stands in the place of the company. "Contributory negligence is such negligence on the part of the plaintiff as directly contributes to and in part causes the injury, and it is settled law of this state that the burden of proving contributory negligence rests upon the defendant,"

In *Bernes* v. *Gas Coal Co.* 27 W. Va. 285, it is held that contributory negligence need not be negatived in the declaration. "When a servant enters into the employment of a master, he assumes all the ordinary risks incident to the employment, whether the employment is dangerous or otherwise." * * "And if a servant willfully encounters dangers which are known to him, or are notorious, the master is not responsible for an injury occasioned thereby." * * "Ordinary care is such care as a person of ordinary prudence would exercise under the circumstances." * * "If the master has been guilty of negligence in failing to procure suitable appliances or machinery for carrying on the business, and injury therefrom results to his servants, he must respond in damages, unless the servant, well knowing the default of the master in this respect, enters upon the employment or continues therein after such knowledge, in which case he assumes the increased risk and can not hold the master for the consequences; but if the servant knows the defect or danger, and has reasonable grounds to believe that the master has cured or would immediately cure the same, he is not guilty of negligence by remaining in the service, and may recover for the injury caused by such negligence of the master."

In *Dowley* v. *Railway Co.*, 28 W. Va. 732, it was held: "The general rule is, that in an action for negligence the plaintiff can not succeed, if it is found by the jury that he himself has been guilty of negligence or want of ordinary care which contributed to cause the injury. But this rule is subject to this important qualification: Though the plaintiff may have been guilty of negligence, and although such negligence may in fact have contributed to the injury, yet, if the defendant could by the exercise of ordinary care and diligence have avoided the injury, the plaintiff's negligence will not excuse or relieve the defendant from liability." * * * "In such case, if the fault or negligence of the plaintiff was the proximate cause of the injury, the defendant is not responsible, although it may have been negligent and the remote cause of the injury."

In *Gerity's Adm'x* v. *Haley*, 29 W. Va. 98 (11 S. E. Rep. 901) it was held: "Where negligence is the ground of an

action, it rests upon the plaintiff to trace the fault of his injury to the defendant, and for this purpose he must show the circumstances under which the injury occurred; and if, from the circumstances so proven by the plaintiff, it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has, by proving the circumstances, disproved his right to recover, and on the plaintiff's evidence alone the jury should find for the defendant." See *Nuzum* v. *Railway Co.*, 30 W. Va. 228 (4 S. E. Rep. 242).

In *Curley* v. *Railway Co.*, 31 W. Va. 116 (5 S. E. Rep. 318) it was held as follows: "In an action by an employe against a railroad company for injury received in the service of the company, if the evidence of either the plaintiff or defendant clearly shows that the plaintiff was guilty of the negligence which was the direct cause of the injury, there can be no recovery against the defendant. If, in such a case, the jury finds for the plaintiff, and judgment is rendered by the trial-court on the verdict for the plaintiff after overruling the motion of the defendant for a new trial, this court will, when the evidence of the plaintiff and the uncontradicted evidence of the defendant, taken together, plainly show that the plaintiff's negligence was the direct cause of the injury, reverse the judgment and grant a new trial."

In *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. Rep. 53) the doctrine laid down in *Berns* v. *Gas Coal Co.*, 27 W. Va. 285, is, among other points, again laid down.

*Searle* v. *Railway Co.*, 32 W. Va. 370 (9 S. E. Rep. 248) relates to passengers.

In *Humphreys* v. *Valley Co.*, 33 W. Va. 135 (10 S. E. Rep. 39) it was held that if an employe willfully encounters dangers, which are known to him or are notorious or apparent, the employer is not responsible for an injury occasioned thereby. In an action by the servant against the master for injury from defective machinery or appliances the burden is on the servant to show that the same was defective, and a servant can not recover for an injury to him from such defective machinery or appliances, unless the master knew or ought to have known of the defect,

and the servant was ignorant of such defect or had not equal means of knowledge.

In *Davis' Adm'r* v. *Coke Co.*, 34 W. Va. 500 (12 S. E. Rep. 539) it is again laid down that, when a servant enters the employment of a master, he assumes all the ordinary risks incident to the employment, whether the employment be dangerous or otherwise.

In *Williamson* v. *Valley Co.*, 34 W. Va. 657 (12 S. E. Rep. 824) the brakeman on a freight-train, while on top of his train, in daylight, was killed by striking his head against a county bridge which spanned the railroad-track. The bridge was not high enough for a man standing on top of a car to pass under. The brakeman was killed on August 12, 1886; commenced service as brakeman on April 4, 1886. When leaving the station on the morning of the accident, about ten minutes before reaching the bridge, he was warned by the fireman to look out for the bridge overhead. In a suit by decedent's administrator against the railroad, the latter demurred to the evidence The court held (1) that the demurrer was properly sustained; (2) that although the railroad company may not have been free from blame, on account of the lowness of the bridge, yet the brakeman's want of proper care contributed to the injury, and the defendant was not liable, because, (3) "in entering the service of the defendant company, under the circumstances, the brakeman was fully aware of the character of the bridge, and while in the service had ample opportunity to become familiar with it, and by continuing in the employment he assumed the risk of being injured by the bridge, as incident to the employment." The court in the opinion, cites the follow ing cases: *Sheeler's Adm'r* v. *Railroad Co.*, 81 Va. 188; *Clark's Adm'r* v. *Railroad Co.*, 78 Va. 709; *Owen* v. *Railroad Co.*, 1 Lans. 108; *Baylor* v. *Railroad Co.*, 40 N. J. Law, 23, cited in 3 Wood, Ry. Law, 1481; *Gibson* v. *Railway Co.*, 63 N. Y. 449; *Rains* v. *Railroad Co.*, 71 Mo. 165; *Railroad Co.* v. *Sentmeyer*, 92 Pa. St. 276; *Railroad Co.* v. *Stricker*, 51 Md. 47.

In *Comer* v. *Mining Co.*, 34 W. Va. 533 (12 S. E. Rep. 476) the court again held the burden of proving contributory negligence to rest on defendant.

In *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12) the same point is again laid down—that contributory negligence is matter of defence; freedom therefrom need not be alleged or proved by plaintiff, but, if it exist, must be proven by defendant. It also holds that, "after the defendant has given in his own evidence, a motion to strike out all the evidence, on the ground that it is insufficient to sustain the issue on the part of the plaintiff, should not be granted. The doctrine is also laid down that contributory negligence on the part of the plaintiff renders the defendant liable only for gross or wanton or willful neglect, where otherwise it would be held liable for the slightest neglect, as in the case of an injured passenger, or ordinary neglect, as against a stranger; that "the general rule in regard to contributory negligence is that, if the negligence be mutual on the part of plaintiff and defendant, there can be no recovery. But if the injury would have happened just the same, although the plaintiff had been in no wise negligent, his negligence will not prevent his recovery, or if the defendant, after he has discovered the dangerous exposure, refuses or neglects to practice any care or precaution to prevent the injury, he will be held liable."

In *McKelvey* v. *Railway Co.*, 35 W. Va. 500 (14 S. E. Rep. 261) it is held that in case the decedent, a locomotive engineer, was killed by the explosion of a defective engine, and decedent had knowledge of such defect, there could be no recovery, unless there was some promise, express or implied, to repair the engine in the defective part, and that without such promise he would fall under the general rule, that an employe continuing work knowing defects in machinery and the danger to him, can not recover. 35 W. Va. 511 (14 S. E. Rep. 265) citing *Hough* v. *Railroad Co.*, 100 U. S. 313; *District of Columbia* v. *McElligott*, 117 U. S. 632 (6 Sup. Ct. Rep. 884); *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Conroy* v. *Iron Works*, 62 Mo. 35; 14 Am. & Eng. Enc. Law, 857.

In *Johnson* v. *Railway Co.*, 36 W. Va. 73 (14 S. E. Rep. 432) it is laid down that the servant takes upon himself the burden of showing that the master had notice of the defect

complained of, or that by the exercise of ordinary care, which he is bound to observe, he would have known it, and that the servant was ignorant of such defect or had not equal means of knowledge.

In *Knight* v. *Cooper*, 36 W. Va. 232 (14 S. E. Rep. 999) it was held that, "when a servant enters into the employment of a master, he assumes all the ordinary hazards incident to the employment, whether the employment be dangerous or otherwise. The test of liability is the negligence of the master, not the danger of the employment, though the danger of the employment may help to determine the ordinary care required in the case. The mere fact of injury received by the servant raises no presumption of negligence on the part of the master. When a servant willfully encounters dangers which are known to him, the master is not responsible for an injury occasioned thereby. A servant having knowledge of danger about him must use diligence and care in protecting himself from harm."

*Beuhring's Adm'r* v. *Railway Co.*, 37 W. Va. 502 (16 S. E. Rep. 435) turns upon the question of the negligence of a fellow servant as one of the ordinary risks assumed as incident to the employment.

*Butcher* v. *Railroad Co.*, 37 W. Va. 457, lays down the doctrine that the plaintiff must show the circumstances under which his injury occurred, and if from these circumstances, so proven by the plaintiff, it appears that the fault was mutual, or in other words, that contributory negligence is fairly imputed to the plaintiff he can not recover.

In *Snoddy* v. *City of Huntington*, 37 W. Va., 442, it is held that contributory negligence, when it depends upon questions of fact and testimony, is for the jury; but when the facts are undisputed, or indisputably established by the evidence of the plaintiff, the question becomes one of law, for the court.

*Boggess* v. *Railway Co.*, Id. 525, holds that the facts there mentioned showed sufficient compulsion on the part of the conductor to excuse the plaintiff from the charge of contributory negligence in jumping from the running train so as to cause the injury complained of.

In *Hanley* v. *City of Huntington*, 37 W. Va. 807, it is held

that, where the evidence relating to contributory negligence is conflicting and uncertain, then the question is one for the jury, and will not be interfered with by the court.

In *Overby* v. *Railway Co.*, 37 W. Va. 813, the doctrine of *Butcher* v. *Railway Co.*, above, is again laid down, and that a motion to strike out the plaintiff's evidence will not be entertained after the defendant has given in his evidence, on the ground that it is insufficient to sustain the issue on the part of the plaintiff.

In *Gregory's Adm'r* v. *Railway Co.*, 37 W. Va. 819, there is a general discussion of the subject, especially as to what motion for a new trial ought to show; that a rule of the company, to be binding, must be known; and in reference to counsel reading from law-books and reported cases in argument before the jury. See *Hanley* v. *City of Huntington*, Id. 807.

I have thus gone over the most, if not all, of our cases on the subject of contributory negligence and assumed risk of injury on the part of the employe after full knowledge of the danger, and from them may be gathered the following points of law settled in many cases:

The mere fact of injury received by the servant raises no presumption of negligence on the part of the master. The servant assumes the ordinary risks of danger incident to the employment, whether the employment be dangerous or otherwise. Having knowledge of the dangers about him, he must use diligence and care in protecting himself from harm; for, when he willfully encounters dangers, which are known to him, the master is not responsible for the injury caused thereby; and if he continues in the employment after knowledge of the risk of danger and appreciation thereof, without proper protest or complaint on his own part or promise on the part of the employer that the danger will be shortly removed, he will be held to have assumed the risks of such danger of injury, and to have waived any claim upon his employer for damage in case of injury. In this state contributory negligence on the part of the plaintiff, where it does not appear by his own showing, is treated as a distinct wrong, which plaintiff need not defend against either by his pleading or his proof, but is

matter of defence, which must be proved by defendant, but it can be shown under the general issue.

I shall consider first the six instructions, viz. Nos. 1, 2, 3, 6, 8 and 9, given for plaintiff, and excepted to by defendant. Three grounds of defence were apparently set up: (1) That the projecting limb, as against a construction-company building the road and laying down a "skeleton-track to haul material," was one of the ordinary dangers of the employment. (2) Whether the leaving it there was or was not negligence on the part of the defendant, for which it would be liable, it was not liable in this case, because the decedent's own negligence directly and proximately contributed to his injury. In other words, he was guilty of contributory negligence. (3) That, after the risk of danger from the projecting limb became known to him, he continued in the employment without complaint to the one whose duty it was to remove it, and that he thus assumed the risk of such danger.

It is not contributory negligence to engage in a dangerous occupation. The running of a completed railroad by the common carrier after it is well furnished and equipped is dangerous, especially to the employes. It is said that during the course of one year, in the United States, more persons are killed and wounded by railroads than were killed on both sides at the battle of Sedan. That would indicate that the business is dangerous as well as large.

There must be dangers in building a temporary or skeleton track, and hauling material over it, for the purpose of construction, which are not incident to the services of a brakeman on a completed road. On this point there was some evidence tending to show that some such dangers are usual in the construction of railroads. This phase of the case is contra indicated by these instructions, perhaps correctly, for such limb was certainly dangerous to a brakeman on the top of a box-car.

I have given above a synopsis of the facts in the case of *Williamson* v. *Railway Co.*, 34 W. Va 657 (12 S. E. Rep. 824) cited above, because it seems to be much relied on by defendant. The low bridge that killed the brakeman in that case was a county bridge across and over the track.

Here the limb could have been easily removed, and was entirely under the control of defendant. There is a decided tendency not to extend the doctrine laid down in such cases where the road is complete, and used by the common carrier. I have seen nothing on the point in the case of laying a skeleton-track, upon which to haul material; nothing but the general doctrine that it is the duty of the master to furnish and keep for the servant a safe place to work—a way free from obstructions.

(2) These instructions, singly, and taken as a whole, seem to be based on the single question of fact—was or was not the deceased guilty of negligence directly and immediately contributing to his injury?

(3) The third, and apparently main ground of defence, is either ignored entirely, or touched upon in such general and comprehensive terms as to render it, at the least, doubtful whether it is taken at all into the hypothesis of facts on which instructions No. 8 and No. 9 are based. Now, the law is well settled that instructions which tell the jury that, if they believe a certain supposed and enumerated state of facts, then the defendant is liable, and they must find for the plaintiff, are fatally defective, if there is wholly omitted from such enumeration a fact the evidence tends to prove, which, if true, would require a different verdict—in this case, a verdict for the defendant Such I conceive to be the fault of these six instructions, taken as a whole, and of No. 8 and No. 9 in particular.

From the testimony of plaintiff's witnesses, as certified to us, there is scarcely room for doubt that Elmore Graves, the brakeman, not only saw and knew of the projecting limb, but had the risk of danger therefrom pointed out to him while on top of a box-car, and on that occasion avoided it. This is shown by all the testimony, and by what he said himself after the accident. Now, the general rule is well settled that if the servant continues in the employment, without complaint, after the risk of such danger comes to his knowledge, he is deemed to assume such risk, and to waive any claim upon his employer for damages in case of injury. Such is the settled law in this state, as laid down in the many cases, all or the most of them

cited above, in the order of time in which they were decided.   See Beach, Contrib. Neg. (2d Ed.) § 371, and the very many cases cited.

It may be said that there was evidence tending to show· that he made complaint; that it might be inferred from what Grimsley, superintendent of the construction train, said :  " I directed my men to remove it, but they neglected it."   This may be conceded, and, if so, it only shows that two material facts which the evidence tended to prove, instead of one, were omitted from the hypothesis of facts upon which, if believed, the jury were directed to find a verdict for the plaintiff.   The jury might well believe the one, and not the other, so that a finding for defendant, and not for the plaintiff, would have been the proper verdict. This fault was not cured, this defect was not supplied— could not be supplied—by any independent instruction given for plaintiff, for such instruction, if given, would be repugnant and contradictory to these, thus tending to confuse the jury, and leading them to suppose that they could take their choice between them—at least, that they were authorized to find for plaintiff, according to the instruction of the court, if they believed from the evidence the supposed facts upon which it was based.   Taking plaintiff's six instructions seriatim, No. 8 and No. 9 are faulty for the reason just pointed out.

As authority for instruction No. 1, we are referred to 14 Amer. & Eng. Enc. Law, 871, citing Flynn v. Railroad Co., 78 Mo. 195; Donovan v. Gay, 97 Mo. 440 (11 S. W. Rep. 44;) Cahill v. Hilton, 106 N. Y. 512 (13 N. E. Rep. 339).   I find the law thus laid down in Flynn v. Railroad Co., 78 Mo. 195–212: "The law, out of regard to the instinct of self preservation, presumes that the deceased at the time was in the exercise of due care."   This presumption is not overthrown by the mere fact of injury.   The burden rests upon the defendant to rebut this presumption; citing Buesching v. Gaslight Co., 73 Mo. 229–233, where the doctrine is laid down, as it has often been in this State, that it is not incumbent upon the plaintiff, in the first instance, to show that he was free from negligence, or in the exercise of ordinary care, at the time of receiving the injury com-

plained of, but that the concurring negligence of the plain-tiff is matter of defence, and the burden of showing it is therefore upon the defendant. Page 229. And on page 233 the language of instruction No. 1 is used. See discussion of the subject in Beach. Contrib. Neg. (2d Ed.) § 417 *et seq.*, who regards the rule that puts the burden of proving contributory negligence, as matter of defence, upon defendant, as resolving itself, in the last analysis, into a matter of legal presumption, and is of opinion that there is no middle ground between the two presumptions. This may be correct, but I think instruction No. 1 would have been better, had it followed the language of our own cases on the subject.

In the New York case cited—*Cahill* v. *Hilton* (1887) 106 N. Y. 512 (13 N. E. Rep. 339)—the opposite doctrine is laid down. "He (the master, the defendant) is entitled to the benefit of the presumption that he has performed his duty until the contrary appears;" citing Wood, Mast. & S. §§ 345, 346. It is not necessary to enter into this vexed question. The point is settled in this State by repeated rulings already cited. For a full and able discussion of the subject see Beach, Contrib. Neg. c. 15; notes by Freeman in *Farish* v. *Reigle*, 11 Gratt. 697; 2 Thomp. Neg. c. 23, p. 1175; Thomp. Car. 209–215. "One can not fail to call to mind that contributory negligence is as distinct a wrong in the plaintiff as negligence is in the defendant, and that it is as much against the principles of law to presume it on the one side as on the other; resulting, therefore, in the conclusion that the defendant can no more avail himself of the one without proof than the plaintiff of the other." Bish. Non-Cont. Law. § 470, citing *Railroad Co.* v. *Horst*, 93 U. S. 291; *Hoyt* v. *City of Hudson*, 41 Wis. 105.

I see no objections to plaintiff's instructions No. 2 and No. 3. As to instruction No. 6, it is correct, applied to its proper subject matter; but, as we have already seen, in our own cases already cited, he may, after full knowledge, by continuing in the employment without protest or complaint, be held to have assumed the risk of danger from defendant's neglect to provide a safe place or way. Grimsley had charge of the track laying and ballasting, and of

the construction train. He knew of the projecting limb, and that it was dangerous, for he directed his men to remove it, but they neglected to do it. When he did this does not appear, nor that he knew that the brakeman had said anything about it, or that the brakemen knew of the direction given by Grimsley. But it was likely all to have occurred within a few days, for Graves had only been braking ten or fifteen days, and may have continued in the employment on account of such expectation of its removal in a short time. At least there was enough on this point for the case to go to the jury on the question whether Graves remained in the employment by reason of any promise, express, or from which it might be fairly inferred, that the limb would soon be removed.

For this reason, in part, no doubt, the learned gentleman who presided as special judge refused to give defendant's instructions, Nos. 1, 2, 5, and modified defendant's instructions Nos. 8 and 9, before giving them; and in this we see no error, especially as plaintiff's instructions Nos. 3, 6, 7, and 10, and Nos. 8 and 9 as modified, seem to fully cover the same ground. They were as favorable as defendant had a right to ask. I take it for granted that plaintiff's instruction No. 4 was refused, but whether refused or given is left in doubt by the record.

By reason of the error of the court in giving for plaintiff his instructions Nos. 8 and 9, to which defendant excepted, the judgment and verdict complained of are set aside, and a new trial is awarded.