# CHARLESTON.

## McCreery v. Ohio River Railroad Co.

### Decided March 23, 1901.

1. DAMAGES—*Contributory Negligence—Recovery.*

In an action against a railroad company by an administrator for damages for the death of his intestate, a conductor, while in charge of one of defendant's trains, it is error to refuse to instruct the jury that, if they find from the evidence in the case that the accident resulting in the death of the conductor could have been averted by the proper discharge on his part of the duties of his employment, then the plaintiff cannot recover in the action, and they should find a verdict for, the defendant, there being evidence tending to support the facts on which it is based; and this notwithstanding an instruction has been given at the instance of the plaintiff in the case that the jury must find for the plaintiff, under certain circumstances set out, "unless they find from the evidence that the accident could have been averted by the decedent if he had properly performed the duties of his employment, and that he was himself guilty of negligence directly contributing to the injury." (p. 308).

2. NEGLIGENCE MUTUAL—*Instruction.*

In such case, and where there is evidence tending to show mutual negligence on the part of decedent and the defendant, and the defendant asked the following instruction: "The court instructs the jury tnat if they should find that the evidence in tnis case discloses that the injury resulting in the death of Jas. C. McCreery was caused by the mutual fault of both parties, such fault being the proximate cause of the accident, and that it would not have happened except for the failure of McCreery to properly observe the company's rules, concurring with the fault of the defendant in allowing the boom of the derrick to swing around over the tracks, there can be no recovery in this action, unless said injury could have been avoided after the defendant had notice of the negligence of the plaintiff or was wanton or malicious,"—*Held*, error to refuse the instruction. (p. 309).

Error to Circuit Court, Cabell County.

Action by Nannie J. McCreery against the Ohio River Railroad Company.   Judgment for plaintiff. Defendant brings error.

*Reversed.*

Vinson & Thompson and H. P. Camden, for plaintiff in error.

Simms & Enslow, for defendant in error.

McWhorter, Judge:

This is an action at law for damages for the death of plaintiff's intestate, James C. McCreery, conductor on "Dummy train," in the employ of the Ohio River Railroad Company, by Nannie J. McCreery, his administratrix, against said railroad company in the circuit court of Cabell County.   This case was tried and brought to this Court on writ of error by defendant company, the judgment reversed, the verdict of the jury set aside and a new trial granted.   See 43 W. Va. 110.   A full statement of the case is there made.   It was again tried before a jury, a verdict and judgment again rendered in favor of plaintiff, and the defendant again brings the case here on writ of error, assigning the following errors:

"First.   Because the court misdirected the jury, the instructions being in conflict, and taking away from the jury and determining by the court matters of fact.

Second.   Because the court refused to give to the jury instructions Nos. 7, 8, 9, 10 and 11 asked by the defendant.   The proposition of law asserted in instruction No. 10 asked by the defendant and refused by the court is not referred to or presented in any instruction given to the jury and which clearly propounds the law, and the defendant was manifestly entitled to have the theory of the case as presented by instruction No. 10, given to the jury.

Third.   Because of the refusal of the court to set aside the verdict as contrary to the law and the evidence and inconsistent with the answers returned by the jury to the interrogatories propounded by the court.

Fourth.   Because of the refusal of the court to submit to the jury questions Nos. 1, 2, 3, 4, 5 and 6 asked for by the defendant.

Fifth. Because McCreery was, from all the evidence in the case, clearly guilty of contributory negligence."

The questions in writing asked by defendant to be submitted to the jury, referred to in the fourth assignment of error, are as follows:

1. How far from the derrick boom could a person on the railroad have seen the boom had he been looking for it?

2. In what distance could the train have been stopped upon a danger signal being given?

3. If the danger signal had been given at the first point from which the derrick boom could have been seen, could the train have stopped before it reached the derrick?

4. When not collecting fares on a train being pushed by an engine, did the general manager of the defendant instruct James McCreery to be out on the rear end of the platform?

5. Did conductor McCreery take up any fares after the train left Vinson's station?

6. How far was it from Vinson's station to the derrick where the accident occurred?

7. Was McCreery standing on the front end of the car on the platform when the accident occurred?

8. Had McCreery been reading a newspaper immediately before the accident?

9. Had the cars struck the boom and began to raise up before McCreery pulled the bell cord as a signal?"

The seventh, eighth and ninth of which were submitted to, and answered by the jury.

The five instructions asked for by the plaintiff and given were all passed upon and approved by this Court, as seen in 43 W. Va., excepting the instruction No. 5 in the case now here, and what is there mentioned and set out on page 116 as "the first instruction." It is there stated: "This instruction clearly violates the rule laid down in the case of *Woodell* v. *Improvement Co.*, 38 W. Va. 23, (17 S. E. 386). The third syllabus is as follows: 'When the court instructs the jury that, if they believe from the evidence certain hypothetical facts mentioned in the instruction, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which being believed from the evidence, would require a different verdict, such instruction is erroneous, and if excepted to, and not cured, is ground for reversal.' This present instruction en-

tirely omits any reference to the facts bearing on the intestate's alleged contributory negligence, and which, if established to the satisfaction of the jury, were sufficient to defeat the action." Instruction No. 5 is the same as the "First instruction" just referred to, so amended as to relieve it of such criticism, and to bring it fully within the rule laid down in said *Woodell-Improvement Co. Case.* · Said instruction five is as follows: "The court instructs the jury that it is the duty of the defendant railroad company to keep its roadbed in a reasonably safe condition, so that its employes on its trains shall not be endangered in the discharge of their duties; and if the jury find from the evidence that the defendant allowed and permitted a derrick, with a swinging arm or boom thereon, to stand on or so near its right of way or roadbed and so loosely fastened or tied that the arm of said derrick was liable to blow or swing around across the defendant's tracks on which the defendant's cars passed, and thereby endanger the passage of trains and the lives and limbs of employes thereon, and that the said derrick, arm or boom did actually blow around or swing across the track and cause the train on which the decedent James C. McCreery was employed, to be derailed and the said James C. McCreery to be killed, as charged in the declaration, then, unless you further find from the evidence that the accident could have been averted by the decedent, McCreery, if he had properly performed the duties of his employment, and that he was himself guilty of negligence directly contributing to the injury, you should find for the plaintiff and assess her damages at such a sum as may seem fair and just, not exceeding the amount claimed by plaintiff in her declaration." It is contended by appellant that No. 5 is erroneous in that "it tells the jury that they must find for the plaintiff under certain circumstances 'unless they find from the evidence that the accident could have been averted by the decedent if he had proprly performed the duties of his employment, and that he was guilty of negligence directly contributing to the injury.' I presume it was the intention to say, 'and that he was himself *not* guilty of negligence directly contributing to the injury,' and this not being the instruction it was plainly erroneous." The language of the instruction is right, conveying clearly the meaning of the court, that under certain circumstances stated in the instruction, the jury should find for the plaintiff, *unless* they

should find from the evidence two certain other facts. 1st, that the accident could have.been averted by the decedent if he had properly performed the duties of his employment, and second, that he was himself guilty of negligence directly contributing to the injury, both being the further findings which should defeat his recovery under the first part of the instruction.

The defendant asked for instructions Nos. 1 to 12, inclusive, (except No. 6). The court gave the first five, and refused to give Nos. 7, 8, 9, 10, 11 and 12. To the ruling of the court in so refusing the defendant excepted. Said instructions are as follows:

"7. The court further instructs the jury that if they should find from the evidence that at the time the accident occurred which resulted in the death of Jas. C. McCreery the train upon which he was conductor was being run backward by his order, and that when the train was so run it was his duty to stand upon the front platform and keep a lookout for obstructions upon the track when not otherwise engaged about his duties as. conductor thereon, and that immediately before the accident the said McCreery was on the inside of the car door reading a newspaper, and that the obstruction causing the wreck was first discovered by a person on the train, and that if McCreery had been standing on the front platform keeping a lookout for obstructions on the track and could have seen the obstruction in time to have stopped the train and avoided the accident, then you must find for the defendant.

8. The court instructs the jury that if you find from the evidence that the deceased, Jas. C. McCreery, was acting in the capacity of both conductor and flagman, and that under the rules of the defendant it was his duty when the train was running backwards under his orders to keep a lookout, when not otherwise engaged, on the front platform of the front car, so as to notify the engineer of obstructions, and prevent accidents therefrom, and that he was not otherwise engaged immediately preceding the accident, and this accident resulting in his death could have been avoided by the proper discharge on his part of this duty, then you must find for the defendant.

9. The court further instructs the jury that if you find from the eidence in this case that the accident resulting in the death of Jas. C. McCreery could have been averted by the proper discharge upon his part of the duties of his employment, then the

plaintiff cannot recover in this action, and you should find a verdict for the defendant.

10.    The court instructs the jury that if they should find that the evidence in this case discloses that the injury resulting in the death of Jas. C. McCreery was caused by the mutual fault of both parties, such fault being the proximate cause of the accident, and that it would not have happened except for the failure of McCreery to properly observe the company's rules, concurring with the fault of the defendant in allowing the boom of the derrick to swing around over the tracks, there can be no recovery in this action, unless said injury could have been avoided after the defendant had notice of the negligence of the plaintiff or was wanton or malicious.

11.    The court instructs the jury that if you should find from the evidence that the general manager of the defendant company instructed the deceased, James McCreery, to ride on the front end of the car out on the platform when the train was being backed or pushed whenever he was not engaged in taking up fares, and if you further find from the evidence that the said James McCreery, had he been standing on the front end of the platform of the front car that was being pushed, could have by the exercise of reasonable diligence discovered the obstruction of the derrick boom across the track in time to have had his train stopped before reaching the derrick, and that the said McCreery was not on the end of the platform of the front car and did not signal to the engineer in time to have said train stopped before the accident occurred, then you should find for the defendant, although you should further find from the evidence that the defendant was negligent in allowing said derrick boom to swing out over its track.

12.    The court instructs the jury to find a verdict for the defendant."

The appellee insists that seven and eight are in substance if not in language the same as defendant's instruction No. 3, which is as follows:

"The court also instructs the jury that if they find from the evidence in this case that a rule of the defendant required the plaintiff's intestate, while his train was backing, to take a conspicuous place on the front of the car, so as to be able to perceive the first sign of danger and immediately signal the engineer, and that the plaintiff's intestate was acquainted with

such rule, and if they further find that at the time of the accident complained of the train in question was backing and the deceased was not occupying the required place on the said leading car and was not prevented from occupying it by the performance of other duties, and that if he had while said train was so backing, and no other duty was conflicting, occupied such place, he could have discovered the obstruction in time to signal the engineer and stop the train in time to have prevented the accident, then the plaintiff's intestate was guilty of contributory negligence, and your verdict should be for the defendant." An inspection of Nos. 7 and 8 will show that while the language is somewhat different, not only from each other but from No. 3, yet the last mentioned instruction presents all phases of the matters presented in said seven and eight, and the giving of these would only tend to confuse and not enlighten the jury. Instructions are intended to aid the jury in coming to correct conclusions on the matters at issue. No. 9 is a correct instruction and should have been given. It is said by appellee that Nos. 9 and 10 are the same in substance as plaintiff's No. 5, which says that under the circumstances enumerated in the first part of the instruction they should find for the plaintiff unless they should further find from the evidence that the accident could have been averted by the decedent, McCreery, if he had properly performed the duties of his employment, and that he was himself guilty of negligence directly contributing to the injury. In this No. 5 are coupled two elements, both of which must be found by the jury to exist against the plaintiff before recovery of plaintiff could be defeated under the instruction No. 5, given for plaintiff, while defendant's nine is based solely on the one "that if the accident resulting in the death of McCreery could have been averted by the proper discharge upon his part of the duties of his employment, then the plaintiff cannot recover in this action, and you should find a verdict for the defendant." The rule of the company in relation to McCreery's duties in keeping a lookout from the front platform of the car when the train was being run backwards or pushed, was reasonable and there was evidence tending to show that decedent failed to properly discharge such duties, and if the jury should find that he had failed to be obedient to a known reasonable rule, made as well for his own safety as that of the lives of the passengers and the property of the company entrusted to his care and keeping his administrator

should not recover. It is true it may be said that such failure to discharge properly the duties of his employment would of itself be contributory negligence, but the defendant had a right to have the benefit of his instruction as to failure of duty on part of decedent, without coupling it with the term "contributory negligence," which has something of a technical signification which might not be so clear to the minds of the jury, and this question of failure to discharge properly the duties of his employment by the chief officer of defendant in charge of its train is a matter of great moment and well worthy of a separate instruction touching it. The general question of contributory negligence has many phases independently of violation of the rules of the company or disobedience of the orders concerning the management of its affairs and business, which it must be allowed to control in its own way under reasonable rules. *Ward* v. *C. & O. Ry. Co.,* 38 W. Va. 46; *Overly* v. *C. & O. Ry. Co.;* 37 W. Va. 524.

Defendant's instruction No. 10 propounds the law correctly, and should have been given. There was evidence tending to show negligence on the part of both the defendant and the decedent. "The general rule in regard to contributory negligence is that if the negligence be mutual on the part of plaintiff and defendent there can be no recovery. But if the injury would have happened just the same, although the plaintiff had been in no wise negligent, his negligence will not prevent his recovery, or if the defendant after he has discovered the dangerous exposure refuses or neglects to practice any care or precaution to prevent the injury, he will be held liable. *Carrico* v. *Railway Co.,* 35 W. Va. 389, syl. 7. There was evidence tending to show that plaintiff was not at his post of duty as prescribed by the rules of defendant, and also evidence tending to show that if he had been there the accident and injury might have been averted. The defendant was entitled to have this question submitted to the consideration of the jury. It is a fact well established by the evidence and by the special finding of the jury in response to question seven that McCreery was not on the platform of the car being pushed in front as the rule of the defendant and his instructions from the general manager of the defendant required him to be. Whether he was keeping a lookout at the door of the car, and whether if he was he was thereby substantially complying with the rule and his instructions was a question for the jury. I am unable to see how the closing part of the instruction

No. 10 can be made to apply in this case, to-wit: "there can be no recovery in this action unless said injury could have been avoided after the defendant had notice of the negligence of the plaintiff or was wanton or malicious." This proposition applies in case of plaintiff who was a trespasser to whom the company owed no special duty, and after having notice of the trespasser's negligence, could avoid the injury but wantonly or maliciously makes no effort to prevent or avoid it. However, it cannot render the instruction bad.

As to instruction No. 11 offered by the defendant and refused, it is defective in that it instructs the jury if they find that if the decedent had been standing on the front end of the car and could have by the exercise of reasonable diligence discovered the obstruction in time to have had the train stopped before reaching it, and that McCreery was not on the front of the car and did not signal to the engineer in time to have stopped the train before the accident occurred, then they should find for the defendant, although they should find from the evidence that the defendant was negligent in allowing the derrick boom to swing out over its track. There is left out of this instruction the very element that was held to render plaintiff's instruction No. 1 bad, and on account of which the case was reversed in 43 W. Va. It instructed them to find for the defendant, because of decedent's absence from the front end of the car, notwithstanding the fact that it did not appear to the jury that he was at that time not engaged in any other duty of his employment which would have excused his absence from the front end of the car to be on the lookout. See syllabus in this case, 43 W. Va. There was too much conflict in the evidence, some of which tending to prove the plaintiff's case, to warrant the court in giving defendant's twelfth instruction. In their brief counsel for appellants say the court erred in refusing to propound to the jury special interrogatories in writing 1, 2 and 3. "The object of these special findings is, not only to secure a more useful and minute examination of the component parts necessary to a general verdict, but either to confirm or antagonize that verdict, whichever way it may be returned. An interrogatory, therefore, the answer to which will in no way control the general verdict, should not be submitted. * * * * Nor is the court bound to submit a general question calling for the finding of no specific fact, nor an inconclusive one, nor one calling for a finding upon an uncontroverted

point. 2 Thompson on Trials, s. 2681. The first is, "How far from the derrick boom could a person on the railroad have seen the boom had he been looking for it?" The evidence shows that about forty minutes before the accident occurred the boom had been tied back. At the time of the accident there was a heavy rain and wind storm raging. Engineer Shelton says, "It was raining very hard and was foggy and misty." The boom had become loosened and blown around over the track presumably as the result of the storm. At what time or when, there is no evidence, only that it must have happened between the time it was tied back, forty minutes before the accident and the time it was discovered by roadmaster Bryan when the train was within three hundred feet of it, and too late to stop the train. The question carries with it the assumption of the fact that the boom was swinging across the track at the time when it might have been seen first from the train in fair weather being over the track, some six hundred feet away. As far as the evidence shows to the contrary the boom might have been across the track when the train first came in sight of the derrick, or it might have been blown across between that time and the time of the discovery of it by Mr. Bryan three hundred feet away. So that any person looking out for it from the point six hundred feet away could not have seen it until it was over the track, whether that was six hundred, five hundred, four hundred or only three hundred feet away. The same objection applies to question No. 3, that it assumes that the boom was over the track when the train came in sight six hundred feet away, when it is not so shown. It was not known to be across the track until seen by Bryan when three hundred feet away. As to the second question, "In what distance could the train have been stopped upon a danger signal being given?" it seems to me, however answered, could not necessarily affect the general verdict. It was clearly proved that the train could not be stopped in three hundred feet, and there is left no doubt but that it could have been stopped in six hundred feet. There is no controversy as to either of those propositions. The fourth question, "When not collecting fares on a train being pushed by an engine, did the general manager of the defendant instruct James McCreery to be out on the rear end of the platform?" appellants say that witness Hite swears positively that he heard the general manager give that instruction to McCreery. Hite was asked whether the rules of the company have a man to

be out on the rear end of the train on the platform when the train is backing up, to which he answered in the affirmative, and said he heard the general manager give McCreery those instructions on the platform. The fact is, the printed rule given in evidence as follows: "104. When a train is being pushed by an engine (except when shifting and making up trains in yards) a flagman must be stationed in a conspicuous position on the front of the leading car, so as to perceive the first sign of danger and immediately signal the engineman," as well as the evidence of said Hite, exclude all exceptions as to other duties interfering with that of being on the front of the car when the train is being pushed backwards, whether the duty is collecting fares on the train, assisting passengers on or off or any other duty. Under the rule the one duty of the flagman was to be on the front of the leading car being pushed, and the testimony of S. D. Ferguson is that McCreery was at the time of the accident standing at the door of the coach in front going west, and as stated in the opinion in 43 W. Va., "Where his duty would require him to be to keep a lookout, hence the presumption is that he was there for that purpose and discharging his duty in the absence of evidence to the contrary." The questions five and six are immaterial, however they might have been answered, could not affect the general verdict. The court did not err in refusing the first six questions as offered.

Appellant contends that the court erred in refusing to enter up judgment for the defendant upon the jury's answers to interrogatories seven and nine. From what has been said herein it will be seen that the answers of the jury to those questions do not necessarily affect the general verdict. As to whether the boom was blown around and over the track after the train had passed the curve and that Bryan saw it as soon as it was possible for any one to have seen it and gave the signal as early as decedent could have done it, or whether the boom was over the track when the train came in sight and could have been seen by one on proper lookout notwithstanding the rain, fog and mist soon enough to give the signal in time to have stopped the train and prevented the collision, were questions for the jury which responses to questions seven and nine did not settle.

For the reasons herein stated the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*